IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 20-cv-22463-FAM

ASHLEY HODSON,

      Plaintiff,

v.

MSC CRUISES, S.A.,

      Defendant.

_____/

**<u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR ALTERNATIVELY
MOTION FOR SUMMARY ADJUDICATION</u>**

Defendant, MSC Cruises S.A. ("MSC"), pursuant to general maritime law, Federal Rule of Civil Procedure 56, and this Court's Scheduling Order Setting Trial (ECF No. 9), hereby moves this Court for entry of Summary Judgment against Plaintiff, Ashley Hodson ("Plaintiff"), and in support thereof states as follows:

## INTRODUCTION

This lawsuit involves an injury aboard the cruise ship *MSC Seaside* allegedly caused when Plaintiff slipped and fell on a wet step nosing. Plaintiff filed a nine-count Amended Complaint alleging: 1) negligent in hiring and retention of crewmembers; 2) negligent training and supervising of crewmembers; 3) negligent failure to warn Plaintiff of an allegedly dangerous condition; 4) negligent design, installation and approval of the subject area; 5) vicariously liability for negligence of its crewmembers; 6) negligent inspection, cleaning, maintenance, repair, or failure remedy the alleged dangerous condition; 7) vicariously liability for negligence of shipboard medical staff; 8) apparent agency as to the acts of the ship's medical staff; and 9) assumption of duty for the negligence of the ship's medical staff. *See* Amended Complaint (ECF No. 6).

Because MSC had no notice of the alleged dangerous condition (*i.e.* water on the subject step), Plaintiff cannot satisfy an essential element of her negligence causes of action, and Defendant is entitled to summary judgement as to Counts 1, 2, 3, 5, and 6. Additionally, because Defendant MSC did not build, design, install, or approve the subject step, Defendant is entitled to summary judgment as to Count 4. Finally, because there is no evidence to support Plaintiff's allegation she received negligent care aboard the *Seaside* – and Plaintiff has offered no expert opinion that her shipboard care was in any way negligent – Defendant is entitled to summary judgment on Counts 7, 8, and 9. Because Plaintiff cannot meet her burden of proof as to the

essential elements of her claims, as analyzed fully below, MSC is entitled to summary judgment on all nine Counts of Plaintiff's Amended Complaint.

## MEMORANDUM OF LAW

### I.      Federal Maritime Law Governs This Action

It is well settled that general maritime law governs passengers' lawsuits against cruise lines. *See Keefe v. Bahama Cruise Line, Inc.,* 867 F.2d 1318 (11th Cir. 1989); *Stuart Cay Marina v. M/V Special Delivery*, 510 F.Supp.2d 1063, 1069 (S.D. Fla. 2007); *see also, Kermarec v. Compagnie Generale Transatlantique,* 358 U.S. 625 (1959); *Pope & Talbot, Inc. v. Hawn,* 346 U.S. 406 (1953); *Rindfleisch v. Carnival Cruise Lines, Inc.,* 498 So. 2d 488 (Fla. 3d DCA 1986); Thomas J. Schoenbaum, 1 ADMIRALTY AND MARITIME LAW §3-5 (2d ed. 1994). Plaintiff has asserted this action is governed by federal maritime law. *See* Amended Complaint (ECF No. 4) at ¶7 ("Jurisdiction is proper under 28 U.S.C. § 1333 because the action arises under admiralty and maritime law"). Under general maritime law, a shipowner owes passengers a duty of reasonable care under the circumstances. *Kermarec*, 358 U.S. at 631.

### II.     Plaintiff's Summary Judgment Burden

The Eleventh Circuit and scores of courts in the Southern District have ruled that incidents where guests are injured on cruise ships can be appropriately disposed of on a motion for summary judgment. *See e.g. Gorczyca v. MSC Cruises, S.A.*, 715 Fed. App'x. 919 (11th Cir. 2017); *see also Fedorczyk v. Carribean Cruise Lines, LTD*, 82 F.3d 69 (3d Cir. 1996); *Santisteban v. MSC Crociere, S.A.*, Case No. 09-61397 (S.D. Fla. Jan. 19, 2011) (DE 52); *Mercer v. Carnival Corporation,* 2009 WL 302274 (S.D. Fla. Feb. 9, 2009); *Wish v. MSC Crociere S.A.*, 2008 WL 5137149 (S.D. Fla. 2008); *Cummiskey v. Chandris, S.A.*, 719 F. Supp. 1183 (S.D.N.Y. 1989). Federal Rule of Civil Procedure 56(c) provides that summary judgment is appropriate where there

are no genuine issues of material fact in dispute. Further, "some alleged factual disputes between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986) (emphasis in original).[1]

A party opposing summary judgment may not simply rely upon the pleadings or mere denials of the allegations contained in a motion for summary judgment, but rather *must adduce evidence showing that material facts are in issue*. *Anderson*, 477 U.S. at 256 (emphasis added); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) ("Rule 56(c) therefore requires a non-moving party to go beyond the pleadings and by [its] own affidavits or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"). Furthermore, "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002). As set forth below, Defendant is entitled to summary judgment because no genuine issues of material fact remain in dispute, and Plaintiff cannot carry her burden of proof as to essential elements of her claims.

### III.   Summary Judgment Should Be Granted as to Counts 1, 2, 3, 5 and 6 Because MSC Did Not Have Notice of a Dangerous Condition

There is *no evidence* whatsoever showing MSC had prior notice of the water on a step nosing that Plaintiff alleges caused her fall.[2] In maritime negligence cases, notice of an alleged

---

[1] "For factual issues to be considered genuine, they must have a real basis *in the record* ... mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England,* 432 F.3d 1321, 1326 (11th Cir. 2005) (citations omitted) (emphasis added).

[2] It is well settled in the Eleventh Circuit that vicarious liability, actual agency, and apparent agency are not causes of action but rather theories of negligence. *Barabe v. Apax Partners Europe Managers, Ltd.,* 359 Fed.Appx. 82, 84 (11th Cir. 2009) (holding that there is no cause of action

dangerous condition is a prerequisite to imposing liability. *Keefe*, 867 F.2d at 1322. At deposition,

Plaintiff was clear regarding the conditions and circumstances that caused her fall:

> *Q. Did you slip or did you trip?*
>
> *A. I slipped.*
>
> *Q: Do you know what caused you to slip?*
>
> *A: There was a slippery substance on the stairs.*
>
> *Q: Do you know what it was?*
>
> *A: I believe it was the water from the pool areas and from the wet bathing suits and all the people running around with the bare feet, tracking all the water from the pool.*
>
> *Q. So you could see people had bathing suits when you were walking down the steps, you saw people -- were people in bathing suits walking up the steps?*
>
> *A. Yes.*

Deposition of Ashley Hodson attached hereto as "Composite Exhibit A" at p. 49/lines 5-19.

> *Q: Did – do you know what you slipped on? By that, I mean, did you slip on the carpet? Did you slip on that metal nosing?*
>
> *A: I believe that I slipped on both the carpet and the metal nosing, but, primarily, the metal nosing since it was more of a sleek surface. I can't say definitively, **but I believe it was the metal nosing.***

*Id.* at pp. 55-56/lines 21-25 and 1-3 (emphasis added).

Plaintiff further testified that she saw the water on the steps before she fell.

> *Q. When you were -- saw all the folks that were walking around with bathing suits, did you take any precautions when you were walking down the steps?*
>
> *A. Yes, I did walk very slowly and I also tried to avoid obvious puddles that were wet with water, but I was walking very slowly down the stairs.*

---

for "agency"); *Flaherty v. Royal Caribbean Cruises, Ltd.*, 172 F. Supp. 3d 1348, 1352 (S.D. Fla. 2016) ("The [c]ourt notes from the outset that apparent agency is not independent causes of action, but instead a theory of liability."); *Witover v. Celebrity Cruises, Inc.*, 161 F. Supp. 3d 1139, 1149 (S.D. Fla. 2016) (same). Furthermore, a vicarious liability claim fails when there is no underlying negligence. *See Ceithaml v. Celebrity Cruises, Inc.*, 207 F. Supp. 3d 1345, 1355 (S.D. Fla. 2016) ("At the outset, the [c]ourt finds that because [plaintiff] failed to state a plausible negligence claim, her 'apparent agency' claim also fails."). For the purposes of this Motion, Defendant does not dispute that it is vicariously liable for the actions of its employees.

*Q. How big were those puddles?*

*A: There were some puddles just from people running, so I don't know exactly how big. I mean, they weren't gigantic, but **they were obvious** from water pooling.*

*Id.* at pp. 58/lines 1-14.

Plaintiff had not been down these steps before she fell and water was being dripped on the

stairs at the time she fell.

*Q. Had you been down those steps before you fell?*

*A. No.*

*Q: What was happening on those steps at the time that you fell? Were there other people on the steps?*

*A: Yes, there were a lot of people on the steps. There were a lot of people going down and there were a lot of people coming up. And we were in between two pool areas, so everyone was wearing their bathing suits. A lot of children, particularly because it was the children's pool area and splash pad area, plus the arcade, which was right at the top of the stairs. So it was very busy, very noisy, very loud and a lot of commotion.*

*Id.* at p. 48/lines 2-17.

Other than her own speculation, Plaintiff did not know how long the water had been on the step.

*Q. So you don't know how long those puddles had been there, though?*

*A. They looked like they had been there a while.*

*Q. How can you determine that?*

*A. Well, there were a lot of people running around and there were no caution wet-floor signs. There wasn't taking any -- there was no one there that was actually trying to clean up the mess. And they looked like they had been there for quite awhile.*

*Q. Were they dirty at all? Was there color to it?*

*A. No, not that I remember.*

*Id.* at pgs. *58-59/*lines 9-25 and 1-12 (emphasis added).

Other that pure speculation, Plaintiff is unable to point to any evidence showing how long

the water had been there or that MSC had either actual notice of the water on the step. Plaintiff

testified she slipped on the wet metal nosing of the stairs, which had become wet as passengers'

wet bathing suits were dripping on them.

The *Seaside* entered service in November of 2017. Since that time, not a single one of the tens of thousands of passengers sailing on the *Seaside* prior to Plaintiff reported an incident substantially similar to the incident as alleged by Plaintiff (*i.e* slipping on the pool water on the nosing of a step in a very busy stairwell near the pool).[3] Furthermore, there is no evidence other passengers or crew members reported an issue with passengers dripping pool water onto these stairs prior to Plaintiff's alleged incident.

The standard of care under maritime law "requires, as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of the risk-creating condition." *Keefe v. Bahama Cruise Line, Inc.,* 867 F.2d 1318, 1322 (11th Cir. 1989). Plaintiff must come forward with evidence that Defendant had notice of the particular condition that led to her injury so that Defendant had a reasonable opportunity to fix the condition. *Salazar v. Norwegian Cruise Line Holdings, Ltd.*, 2016 A.M.C. 1602 (S.D. Fla. May 23, 2016); *Cohen v. Carnival Corp.,* 945 F. Supp. 2d 1351, 1357 (S.D. Fla. 2013) ("mere implication of actual or constructive notice is insufficient to survive summary judgment.") (internal citation omitted); *Weiner v. Carnival Cruise Lines*, 2012 WL 5199604 (S.D. Fla. Oct. 22, 2012); *Mercer v. Carnival Corporation,* 2009 WL 302274 (S.D. Fla. Feb. 9, 2009) (granting summary judgment as plaintiff failed to present evidence that Carnival had actual or constructive notice of a risk-creating condition); *see also Lee v. Regal Cruises, Ltd.*, 116 F.3d 465 (2d Cir. 1997); *Adams v. Carnival Corp.*, 2009 A.M.C. 2588 (S.D. Fla. Sept. 28, 2009). Plaintiff does not know long the water had been on the step before she fell. *See*

---

[3] *Seaside* carries over five thousand passengers per cruise. In its discovery responses, Defendant disclosed one prior incident that occurred on July 12, 2018, where a passenger slipped and fell on the wet nosing of a step in the same stairwell, on a different deck that is not similarly situated with respect to the pool decks. In that case, there was no evidence that dripped pool water caused the nosing to be wet. *See* "Exhibit B", Deposition of Jeff Ramos pages 23-24/lines 18-25 and 1-5.

Deposition of Ashley Hodson, attached hereto as "Composite Exhibit A" at pgs. 58-59/lines 9-25 and 1-12.

Plaintiff has not (and cannot) come forward with any evidence showing MSC had notice of pool water on the subject stairs. *Henderson v. Carnival Corp.*, 125 F. Supp. 2d 1375, 1376 (S.D. Fla. 2000) ("[T]he failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial and requires the court to grant the motion for summary judgment").[4] To meet its burden of showing there is no genuine issue of material fact, a moving party may show an absence of evidence in the record to support the non-moving party's case. *Yusko v. NCL (Bahamas) Ltd.*, 424 F. Supp. 3d 1231, 1238 (S.D. Fla. 2020) (*citing Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 723 (11th Cir. 2019) ("NCL may carry its burden of showing no genuine issue of material fact by showing 'an absence of evidence to support the nonmoving party's case.'")). MSC meets that burden here. There is absolutely no evidence MSC had notice of the water dripped by passengers' bathing suits on the subject stairs. There is no evidence to suggest the water had been there for a sufficient length of time for MSC to be notified, much less have the opportunity to address the condition. As Plaintiff testified:

> *Q: What was happening on those steps at the time that you fell? Were there other people on the steps?*
>
> *A: Yes, there were a lot of people on the steps. There were a lot of people going down and there were a lot of people coming up. And we were in between two pool areas, so everyone was wearing their bathing suits. ...*

---

[4] Summary judgment shall be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial … since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *See Celotex*, 477 U.S. 317, 322-23 (1986); *see also T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (the nonmoving party may not rely on the pleadings but must present specific facts creating a genuine issue of material fact).

Deposition of Ashley Hodson attached hereto as "Composite Exhibit A" at p. 48/lines 5-12.

> *Q: And they were dripping water all over?*
>
> *A: Yes. ... we also saw water being tracked in and out of the arcade area right by the steps.*

*Id.* at p. 49/lines 20-25.

> *Q: Did any of the people who were on the step come to your assistance?*
>
> *A: Yes. ... But at the same time, the people going up and down the stairs, the children in the wet bathing suits were still running back and forth.*

*Id.* at p. 64/lines 12-21.

The water was not dirty, did not have a smell, was colorless, and was not sticky. *See id.* at p. 56/lines 20-25 and p. 59/lines 5-7. There is no indication anywhere in the record the water had been there for enough time to put Defendant on notice of a dangerous condition. Moreover, Plaintiff herself avers that the dripping passengers were actively "running around" dripping water on the steps at the same moment she was ascending (or descending) the stairs.

The burden rests with Plaintiff to prove notice as well as the existence of a dangerous condition for a sufficient interval of time to allow for corrective action. *Keefe,* 867 F.2d at 1322 (11th Cir. 1989); *Monteleone v. Bahama Cruise Line, Inc.*, 838 F.2d 63, 65 (2d Cir. 1988) (granting summary judgment because the court could "find no evidence in the record that [Bahama Cruise Line] had constructive notice of the [defective condition]").

"Courts routinely grant summary judgment in a defendant's favor when a plaintiff fails to adduce evidence on the issue of notice." *Yusko v. NCL (Bahamas) Ltd.*, 424 F. Supp. 3d 1231, 1237 (S.D. Fla. 2020); *see also Marshall v. Royal Caribbean Cruises, Ltd.*, 706 Fed. Appx. 620 (11th Cir. 2017), *cert. denied,* 139 S. Ct. 177 (2018). In *Marshall*, a cruise passenger claimed she slipped on a puddle after it had rained off and on throughout the day and, as here, it was undisputed that she and her traveling companions were aware of the rain and the wetness of the external

surfaces of the ship. *Id.* at 621. The Eleventh Circuit affirmed the district court's order granting summary judgment for the cruise line because "Royal Caribbean had no duty to protect Ms. Marshall from any dangerous condition of which it had no actual or constructive notice." *Id.* (citing *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1322 (11th Cir. 1989) ("as a prerequisite to imposing liability, [the carrier must] have had actual or constructive notice of the risk-creating condition")).

In *Cohen v. Carnival Corp.*, 945 F. Supp.2d 1351 (S.D. Fla. 2013), a cruise line passenger was injured when he tripped and fell down the stairs at the end of a gangplank leading off the ship at a port of call. Carnival filed a motion for summary judgment. The court properly noted that, "[d]efendant's liability in this case turns on whether [d]efendant had notice, either actual or constructive, of an alleged risk-creating condition." *Id.* at 6. The court deemed there was no record evidence that Carnival had notice of a risk-creating condition. *Id*. Accordingly, "because the [c]ourt finds that there is no evidence that Carnival had any actual or constructive notice of any risk-creating condition related to the steps, gangplank, and/or disembarkment procedure, Carnival is entitled to summary judgment on this theory of liability." *Id.* at 11.

Likewise, in *Isbell v. Carnival Corporation*, 462 F. Supp. 2d 1232 (S.D. Fla. 2006), the court granted summary judgment, predicating its decision, in part, on the fact that plaintiff failed to establish any evidence that Carnival had notice of the alleged condition. The court held "[t]he mere fact that an accident occurred does not give rise to the presumption of a dangerous condition." *Id*. The plaintiff in *Isbell* failed to offer evidence of a dangerous condition other than the fact that her accident occurred, which standing alone "is insufficient evidence to support its allegation that [d]efendant had constructive notice of the danger." *Id.*[5]

---

[5] *See also Rainey v. Paquet Cruises, Inc.* 709 F.2d 169 (2d Cir. 1983) (the cruise line was entitled

9

Here, there is simply no evidence Defendant had notice that passengers had dripped water onto the metal nosing or that this constituted a dangerous condition. *Seaside* has been in service since November 2017, and tens of thousands of passengers have sailed on the ship – presumably with many of them likewise using the swimming pools. There is no evidence that anyone ever reported a similar incident involving as slip on a nosing made wet from wet bathing suits. Plaintiff has not (and cannot) come forward with any evidence showing MSC had notice of a dangerous condition. Plaintiff has failed to establish *the* essential element of her claims. Therefore, Defendant is entitled to summary judgment on Count 5 of Plaintiff's Amended Complaint.

## IV. Plaintiff's Failure to Warn Claim Fails

It is well established that actual or constructive notice is likewise a prerequisite to a failure to warn claim – Plaintiff's 3rd Cause of Action. *Cohen v. Carnival Corp.*, 945 F. Supp. 2d 1351, 1357–58 (S.D. Fla. 2013) (*quoting Weiner,* 2012 WL 5199604, at *3 ("[a] cruise line must warn passengers ***only of those dangers that the cruise line knows or reasonably should have known***, and which are not apparent and obvious to the passenger") (emphasis added)); *see also Yusko v. NCL (Bahamas) Ltd.*, 424 F. Supp. 3d 1231, 1234 (S.D. Fla. 2020) (cruise line had no duty to warn because it had no notice of dangers of a dance competition). A cruise line must warn passengers only of those dangers that "the cruise line knows or reasonably should have known." *Thomas v. NCL (Bahamas) Ltd.*, No. 13-24682-CIV, 2014 WL 3919914, at *2 (S.D. Fla. Aug. 11, 2014) (citing *Weiner v. Carnival Cruise Lines,* 2012 WL 5199604, at *3 (S.D. Fla. Oct. 22, 2012)).

---

to dismissal where the plaintiff could not prove how a stool—which the plaintiff allegedly tripped over—was placed on the ship's dance floor, or how long it was present before the plaintiff tripped over it); *Adams v. Carnival Corp.*, 08-22465-CIV, 2009 WL 4907547 (S.D. Fla. Sept. 29, 2009) ("Without specific **facts** demonstrating at least, that the purported defect was detectable with sufficient time to allow for corrective action, this case need not proceed to a jury") (emphasis added).

In *Yusko v. NCL (Bahamas) Ltd.*, the plaintiff sued the cruise line, claiming she sustained injuries during a dance competition in which she was paired with one of the ship's professional dancers. *Yusko v. NCL (Bahamas) Ltd.*, 424 F. Supp. 3d 1231, 1233 (S.D. Fla. 2020). The plaintiff filed a one-count complaint alleging several theories of negligence including, *inter alia*, failure to warn of the dangers of the dance competition. *Id.* After extensive analysis, the district court held that the cruise line did not have actual or constructive notice of the alleged dangerous condition. *Id.* at 1239. Accordingly, the district court granted summary judgment in favor of the cruise line, including on plaintiff's failure to warn claim. *Id.*

As in *Yusko,* here MSC had no notice of any dangerous condition due to the dripping bathing suits on the nosing of the ship's stairs.  MSC had no duty to warn Plaintiff because it did not know of the condition which was open, obvious and apparent to Plaintiff.[6] As examined above, Plaintiff has admitted recognizing the floor was wet before she fell and that she steps and took extra care in traversing the area because she recognized what she deemed to be a dangerous condition. Warnings serve to equalize asymmetries of information and are required only when a cruise line has knowledge of a dangerous condition that is not "apparent" to the passenger. *Kadylak v. Royal Caribbean Cruise, Ltd.*, 167 F. Supp. 3d 1301, 1309 (S.D. Fla. 2016), *aff'd sub nom. Kadylak v. Royal Caribbean Cruises, Ltd.*, 679 F. App'x 788 (11th Cir. 2017); *see also John Morrell & Co. v. Royal Caribbean Cruises, Ltd.,* 534 F.Supp.2d 1345, 1352 (S.D. Fla. 2008) (cruise ship owner did not owe passenger duty to warn about "the obvious danger that dune buggies utilized in [a] shore excursion might be involved in collisions with other vehicles driven

---

[6] It is axiomatic that a cruise line cannot warn of a condition about which it had no knowledge or notice. *Samuels v. Holland Am. Line–USA, Inc.*, 656 F.3d 948, 954 (9th Cir. 2011) ("Because Holland American had neither actual nor constructive notice of a dangerous condition on the Pacific Ocean side of Lover's Beach, it had no duty to warn Samuels about swimming there").

carelessly by others"). MSC, had no duty to warn, as Plaintiff was already aware of the allegedly dangerous condition.

Plaintiff has failed to establish notice, an essential element of her failure to warn claim, and therefore cannot prevail at trial. Furthermore, MSC had no duty to warn of a condition of which Plaintiff was already aware. Defendant is therefore entitled to summary judgment on Count 3 of Plaintiff's Amended Complaint.

## V.      Plaintiff's Negligent Inspection Claims Fails

Notice is also a prerequisite to a negligent inspection claim – Plaintiff's 6th Cause of Action.[7] *Chimene v. Royal Caribbean Cruises, Ltd.,* No. 16-23775-CV, 2017 WL 8794706, at *2 (S.D. Fla. Nov. 14, 2017), *report and recommendation adopted,* No. 16-23775-CIV, 2018 WL 1795799 (S.D. Fla. Jan. 4, 2018) (dismissing plaintiff's claim because notice is a prerequisite to liability under general maritime law); *see also Monteleone v. Bahama Cruise Line, Inc.*, 838 F.2d 63, 64 (2d Cir. 1988). MSC's liability, including liability for failure to inspect or maintain, turns on whether it had notice—either actual or constructive—of the alleged dangerous condition. As set forth above, MSC ***did not*** have notice.

In *Monteleone*, the plaintiff fell down a flight of stairs on a cruise ship. *Monteleone v. Bahama Cruise Line, Inc.*, 838 F.2d 63, 64 (2d Cir. 1988). She alleged she tripped on screws that were holding a brass strip in place at the edge of the stairs. *Id.* The district court found the cruise line liable on the grounds that it regularly inspected and maintained the stairs. On appeal, the Second Circuit reversed and remanded because "[a] shipowner is responsible for defective

---

[7] As an initial matter, there is no evidence that negligent inspection or maintenance of the subject stairway were the proximate cause of the accident. Plaintiff blames her accident on the transitory condition of water on the stair – a condition she testified was caused by passengers in wet bathing suits who were using the stairs at the same time as her. There is no evidence any structural defect in the stairs which could have been remedied by inspection or maintenance.

conditions aboard ship ***only when*** it has actual or constructive notice of them." *Id.* at 65 (emphasis added). The Second Circuit focused its analysis on the issue of constructive notice. The appellate court stated "we find no evidence in the record that [the cruise line] had constructive notice of the protruding screw. Such notice requires that a defective condition exist for a sufficient interval of time to invite corrective measures." *Id.*

Here, there is no evidence MSC had notice of any danger posed by passengers' wet bathing suits dripping water onto the nosing of the subject stair. Plaintiff has failed to establish notice, an essential element of her negligent inspection claim, and therefore cannot prevail at trial. Since MSC had no notice of an allegedly dangerous condition, Plaintiff's negligent inspection claim fails, and Defendant is entitled to summary judgment on Count 6 of Plaintiff's Amended Complaint. Furthermore, Plaintiff has not provided any evidence – nor can she – showing MSC was negligent in inspecting the stairs at issue. There is simply nothing in the record that shows MSC was negligent in inspecting the subject stairs or that regular inspections would have avoided the accident since the wet condition was apparently introduced at essentially the same time Plaintiff used the stairs and fell.[8]  Without evidence, Plaintiff cannot prove negligence predicated on a theory of negligent inspection. Therefore, Defendant is entitled to summary judgment on Count 6 of Plaintiff's Amended Complaint.

**VI.    Plaintiff's Negligent Failure to Maintain Claim Fails**

Notice is similarly a prerequisite to a negligent maintenance claim – Plaintiff's 6th Cause of Action. *Yusko*, 424 F. Supp. 3d at 1238. ***The notice requirement extends even to instances***

---

[8] *Impermissible speculation* cannot support a conclusion of negligence. *See Willis v. Westin Hotel Co.*, 884 F.2d 1556 (2nd Cir. 1989) (*citing* to *Monteleone v. Bahama Cruise Line, Inc.*, 838 F.2d 63 (2d Cir. 1988) (finding impermissible speculation cannot support conclusion of negligence or finding of constructive notice)).

*where plaintiff alleges the defendant created or maintained the defect*. *Pizzino v. NCL (Bahamas) Ltd.*, 709 Fed. Appx. 563, 565 (11th Cir. 2017) (the Eleventh Circuit citing *Keefe* and rejecting the argument that "notice of the defect" could be imputed to a cruise ship operator merely because it had created or maintained the defect).

 To prevail on a negligent maintenance claim, Plaintiff ***must*** show Defendant had notice of the allegedly dangerous condition. *See Sutton v. Royal Caribbean Cruises Ltd.*, 774 F. App'x 508, 511 (11th Cir. 2019) (the Eleventh Circuit ruling in a negligent maintenance claim that "[l]iability thus depends upon whether the ship operator either knew, or else should have known, about the allegedly dangerous condition that the plaintiff claims caused her injury"); *see also Yusko*, 424 F. Supp. 3d at 1238 (granting summary judgment on failure to maintain because plaintiff failed to "point to evidence in the record that [d]efendant had actual or constructive notice of the risk-creating condition"). There is no exception to the notice requirement for negligently creating the hazard or negligently maintaining the cruise ship. *Morhardt v. Carnival Corp.*, 304 F. Supp. 3d 1290, 1295 (S.D. Fla. 2017).  Here, Plaintiff claims she fell on water deposited onto the step by fellow passengers who were using the stairway at essentially the same time as Plaintiff.  As discussed at length above, MSC had no notice, whether actual or constructive, of any allegedly dangerous condition and therefore cannot be liable for negligent maintenance in failing to eliminate the water on the step. *Everett v. Carnival Cruise Lines*, 912 F.2d 1355, 1359 (11th Cir. 1990) (Absent notice of a danger, a shipowner cannot be found liable for negligent "creation or maintenance of a defect.").

 In *Everett*, a passenger tripped over a metal door threshold. *Id.* at 1357. She argued that she did not need to prove the cruise line knew about the threshold because the cruise line "created the threshold and maintained it. In other words, [the shipowner] should have known that there was a

danger of passenger injury because it was the owner and operator of the ship." *Id.* at 1359. On appeal, the Eleventh Circuit held that the district court erred in relying on Florida law—instead of federal maritime law—and concluding that the cruise line could be liable for negligence without actual or constructive notice as long as it "negligently created or maintained the premises." *Id.* at 1358. The Eleventh Circuit rejected this argument since it would defeat "the limitation on the shipowner's liability imposed by *Keefe*" and would make the cruise line a general insurer of its passengers. *Id.* at 1359. The court also rejected the notion that "notice of the defect" could be imputed to a cruise ship operator "inasmuch as it created" the defect "and maintained it," explaining that such a rule would also contravene *Keefe. Id*

As in *Everett,* here MSC had no notice of passengers' wet bathing suits dripping water onto the metal nosing of the subject stair. Plaintiff has failed to establish notice, an essential element of her negligent maintenance claim, and therefore cannot prevail at trial. Since MSC had no notice of an allegedly dangerous condition, Plaintiff's claim of negligent maintenance fails, and Defendant is entitled to summary judgment on Counts 5 and 6 of Plaintiff's Amended Complaint.

Furthermore, Plaintiff has not provided any evidence – nor can she – showing MSC was negligent in maintaining the subject stairs. *See* Amended Complaint at Counts 5 and 6 (ECF No. 6). *See Poole*, No. 14-20237-CIV, 2015 WL 1566415, at \*3 (granting summary judgment because the plaintiff "fails to cite to any record evidence to support her position that Carnival failed to maintain or failed to inspect the glass door at issue…"). Here, there is nothing in the record to suggest that MSC was negligent in maintaining the subject area. Without evidence, Plaintiff cannot prove negligence predicated on a theory of negligent maintenance.

## IV.   There Is No Evidence MSC Designed, Installed, or Approved the Subject Area or that the Design or Installation of the Stairway Caused the Accident

Here, there is nothing in the record to show MSC designed the stairway at issue onboard

*Seaside*, installed the subject stairs, or approved the subject stairs.[9] In fact, the only record evidence

shows that MSC did none of those. *See* Deposition of Jeff Ramos attached as Exhibit B" at pg.

14/lns. 22-25. Without evidence, Plaintiff cannot prove negligence predicated on a theory of

negligent design, installation, or approval.   Further, there is no evidence the stairs themselves are

dangerous as in this case Plaintiff blames her accident on a transitory condition – water on the stair

– rather than some structural defect in the stairway construction.  Therefore, Defendant is entitled

to summary judgment on Plaintiff's 4th Cause of Action.

**V.     There Is No Evidence MSC Was Negligent in Hiring, Retaining, Training, or Supervising Its Crewmembers Nor that Hiring, Training or Supervising Crew Caused Plaintiff's Accident**

Plaintiff's First Count alleges that MSC was negligent when it hired or retained the

crewmembers responsible for inspecting and maintaining the subject area. *See* Amended

Complaint (ECF No. 6) at ¶23. Plaintiff's Second Count alleges that MSC was negligent when it

trained or supervised the crewmembers responsible for inspecting and maintaining the subject area.

*Id.* at ¶47. However, Plaintiff fails to adduce any evidence to support either claim.

In order to state a claim for negligent hiring or retention, Plaintiff must allege (1) that the

individual was incompetent or unfit to perform the work, (2) that MSC knew or reasonably should

have known of the particular incompetence or unfitness, and (3) that the incompetence or unfitness

proximately caused Plaintiff's injuries. *See Gayou v. Celebrity Cruises, Inc.*, 11-23359-Civ-Scola,

---

[9] To meet its burden of showing that there is no genuine issue of material fact, the moving party may show <u>an absence of evidence in the record</u> that supports the non-moving party's case. *Yusko*, 424 F. Supp. 3d at 1238 (*citing Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 723 (11th Cir. 2019) ("NCL may carry its burden of showing no genuine issue of material fact by showing 'an absence of evidence to support the nonmoving party's case.'")); *see also Poole v. Carnival Corp.*, No. 14-20237-CIV, 2015 WL 1566415, at *3 (S.D. Fla. Apr. 8, 2015) (granting summary judgment because the plaintiff "fails to cite to any record evidence to support her position that Carnival failed to maintain or failed to inspect the glass door at issue…").

2012 U.S. Dist. Lexis 77536, *14 (S.D. Fla. 2012) (holding plaintiff failed to plead facts supporting negligent hiring or retention); *Smolnikar v. Royal Caribbean Cruises Ltd.*, 787 F. Supp. 2d 1308, 1318 (S.D. Fla. 2011); *Koens v. Royal Caribbean Cruises, Ltd.*, 774 F. Supp. 2d 1215, 1220 (S.D. Fla. 2011) ("merely pleading the existence of such duties without providing a factual basis for their imposition is insufficient to state a cause of action"). To satisfy the second element, the Plaintiff must allege facts "showing that the employer was put on notice of the harmful propensities of the [employee]" before either hiring or retaining the employee. *Doe v. NCL (Bahamas) Ltd.*, No. 1:16-cv-23733-UU, 2016 U.S. Dist. LEXIS 150817, at *8-9 (S.D. Fla. Oct. 27, 2016) (dismissing plaintiff's claim for negligent hiring or retention because no facts whatsoever were alleged to create a plausible inference of negligence on defendant's part). As in *Doe*, after the close of discovery in the instant matter, there is nothing in the record to suggest that any crew member was unfit, nor that MSC knew or should have known of the particular unfitness of said crew member, or that maintenance or inspection were the proximate causes of this accident. Plaintiff therefore cannot establish essential elements of her negligent hiring or retention claim, and MSC is entitled to summary judgment as to Count 1 of Plaintiff's Amended Complaint.

Similarly, negligent supervision occurs when, during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicated his unfitness, and the employer fails to take further actions such as investigating, discharge, or reassignment. *Doe v. Carnival Corp.*, 470 F. Supp. 3d 1317, 1324 (S.D. Fla. 2020) (internal quotations omitted); *see also Doe*, 2016 WL 6330587, at *4); *Cruz v. Advance Stores Co.*, 842 F. Supp. 2d 1356, 1359 (S.D. Fla. 2012). Plaintiff "must allege that (1) the employer received actual or constructive notice of an employee's unfitness, and (2) the employer did not investigate or take corrective action such as discharge or reassignment." *Id.* Again, there are no

facts in the record to suggest that MSC knew or should have learned of the unfitness of any particular crew member and failed to take further action regarding same – or that same was the proximate cause of the accident. Plaintiff cannot meet her burden at trial as regards her negligent supervision cause of action, wherefore summary judgment should be granted as to Plaintiff's 2nd Cause of Action.

Finally, negligent training occurs when an employer was negligent in the implementation or operation of the training program and this negligence caused a plaintiff's injury. *Doe v. Carnival Corp.*, 470 F. Supp. 3d 1317, 1324 (S.D. Fla. 2020); *Doe v. NCL (Bahamas) Ltd.*, No. 1:16-cv-23733-UU, 2016 WL 6330587, at *4 (S.D. Fla. Oct. 27, 2016. Broad allegations of "fail[ing] to train ... crewmembers" are insufficient even to survive a motion to dismiss, much less a motion for summary judgment. *See Doe v. NCL (Bahamas) Ltd.,* No. 18-20060-CIV, 2018 WL 3848421, at *3 (S.D. Fla. Aug. 13, 2018). Here, Plaintiff again fails to satisfy essential elements of the negligent supervision cause of action. There is no evidence in the record that MSC's training program was deficient or improperly implemented. Therefore, Defendant is entitled to summary judgment on Counts 1 and 2 of Plaintiff's Amended Complaint.

## VII.   Plaintiff Cannot Prove Medical Negligence

Plaintiff's 7th, 8th and 9th causes of action are all based on the purported negligence of the medical staff aboard the *Seaside*. *See* Amended Complaint (ECF No. 6), Counts 7, 8, and 9. In essence, Plaintiff alleges the ship's medical staff failed to properly diagnose and treat her fractures. *See id.* at ¶17.[10] There is no record evidence showing Plaintiff's treatment aboard the *Seaside*

---

[10] Plaintiff pleads that "the ship's medical staff … owed a duty to exercise reasonable care under the circumstances for the safety of its passengers. Such duties include … providing such medical care and assistance as would an ordinarily prudent person under the circumstances." Amended Complaint (ECF No. 6) at ¶¶119-120, 151, and 157-158.

caused any damages or that it fell below the standard of care for a shipboard physician.[11] Plaintiff has designated only two medical experts in this case – Dr. Ceballos and Dr. Suite. Neither expert has offered any opinions regarding the shipboard medical care Plaintiff received. *See generally*, Dr. Ceballos Expert Report dated November 11, 2020 and Dr. Suite Expert Report dated September 1, 2020; *see also* Plaintiff's Expert Witness Disclosures collectively attached hereto as Exhibit E.  The deadline for all Expert Disclosures was November 11, 2020. *See* Scheduling Order (ECF No. 9). Plaintiff therefore lacks any expert whose testimony can establish 1) that medical care on the ship did not meet the established standard of care and 2) that any allegedly negligent medical care caused or exacerbated Plaintiff's injury. In order to establish a cruise line's breach of its duty of care proximately caused her injuries, Plaintiff requires the testimony of a liability expert. *Poole*, 2015 WL 1566415, at *5 ("In order to establish that [cruise line's] breach of its duty of care proximately caused her injuries, Plaintiff requires the testimony of an expert"). Plaintiff, therefore, cannot establish that the medical care Plaintiff received on the ship caused or exacerbated any of her injuries or that there was any medical negligence related to her passage aboard the *Seaside*. On this basis alone, MSC is entitled to summary judgment as to Plaintiff's 7th, 8th and 9th Causes of Action.

It is well-settled that Plaintiff cannot rest on the allegations of her Amended Complaint and that she must prove each element, including causation, essential to her medical negligence claim in order to defeat summary judgment, and. *See Isbell*, 462 F. Supp. 2d at 1238 (granting summary judgment in a maritime negligence claim as plaintiff failed to prove that the cruise line's alleged failures caused her alleged damages). Plaintiff's failure to prove causation necessarily renders all

---

[11] Defendant advises the Court that Plaintiff has requested the shipboard doctor's deposition. The doctor was laid off due to COVID-19. Defendant has been unable to reach the doctor due to ships not sailing.

other facts immaterial. *Id.* Furthermore, Plaintiff's personal opinion as to causation is insufficient to survive summary judgment. *Id.*[12] Here, Plaintiff has entered no record evidence supporting her conclusory allegation that the medical care Plaintiff received on the *Seaside* caused or exacerbated her injuries. Plaintiff has failed to establish an essential element of her claim and cannot prevail at trial. Therefore, Defendant is entitled to summary judgment as to Counts 7, 8, and 9 of the Amended Complaint.

## VII.    Conclusion

As analyzed above, MSC is entitled to summary judgment because MSC had no notice of a dangerous condition, there is no evidence to support any of Plaintiff's remaining claims. Notice is a *prerequisite* for Plaintiff's Counts 3, 5, and 6. Without notice, these claims fail. There is no evidence to show MSC designed, installed, or approved the subject area. Therefore, Count 4 fails. In addition, Plaintiff cannot prove essential elements of her claims of negligent training, hiring, supervision, or retention; therefore Counts 1 and 2 fail. Finally, Plaintiff cannot prove medical negligence, without which Plaintiff cannot establish Counts 7, 8, or 9. Because Plaintiff cannot meet her burden of proof as to the essential elements of her claims, MSC is entitled to summary judgment on all nine Counts of Plaintiff's Amended Complaint (ECF No. 6). Alternatively, the court should grant MSC's Motion for Summary Adjudication as to all counts upon which there is no triable issue of fact.

---

[12] Separate and apart from her inability to prove causation, Plaintiff impermissibly attempts to hold MSC liable for the actions of an independent contractor. *See* Amended Complaint (ECF No. 6) at Counts 7 and 8. *See Medeiros v. NCL (Bahamas) LTD.*, No. 19-CV-20957, 2020 WL 1308728, at *9 (S.D. Fla. Mar. 5, 2020), *report and recommendation adopted*, No. 19-20957-CIV, 2020 WL 1307044 (S.D. Fla. Mar. 19, 2020); *Smolnikar v. Royal Caribbean Cruises Ltd.* (a cruise line cannot be held vicariously liable for the negligence of an independent contractor). A vicarious liability claim fails when there is no underlying negligence. *See Ceithaml v. Celebrity Cruises, Inc.,* 207 F. Supp. 3d 1345, 1355 (S.D. Fla. 2016) ("At the outset, the [c]ourt finds that because [plaintiff] failed to state a plausible negligence claim, her 'apparent agency' claim also fails.").

Dated: December 28, 2020
        Miami, Florida

Respectfully submitted:

**MALTZMAN & PARTNERS, P.A.**

By:     /s/ *T. Alexander Devine*
        Jeffrey B. Maltzman, Esq.
        Florida Bar No. 0048860
        jeffreym@maltzmanpartners.com
        Steve Holman, Esq.
        Florida Bar No. 547840
        steveh@maltzmanpartners.com
        T. Alexander Devine, Esq.
        Florida Bar No. 10052
        alexd@maltzmanpartners.com
        55 Miracle Mile Suite 300
        Coral Gables, Florida 33134
        Tel: 305-779-5665 / Fax: 305-779-5665

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that the foregoing was electronically filed with the Clerk of the Court via CM/ECF on this 28th day of December 2020. I also certify that the foregoing was served on all counsel or parties of record on the attached Service List either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notices of Filing.

By: /s/ *T. Alexander Devine*
T. Alexander Devine, Esq.

**SERVICE LIST**
**CASE NO: 20-cv-22463-FAM**

| | |
|---|---|
| Spencer Aronfeld, Esq. | Jeffrey B. Maltzman, Esq. |
| aronfeld@aronfeld.com | jeffreym@maltzmanpartners.com |
| Matthias M. Hayashi, Esq. | Steve Holman, Esq. |
| mhayashi@aronfeld.com | steveh@maltzmanpartners.com |
| Abby H. Ivey, Esq. | T. Alexander Devine, Esq. |
| aivey@aronfeld.com | alexd@maltzmanpartners.com |
| ARONFELD TRIAL LAWYERS | MALTZMAN & PARTNERS, P.A. |
| 1 Alhambra Plaza, Penthouse | 55 Miracle Mile, Suite 300 |
| Coral Gables, FL 33134 | Coral Gables, FL  33134 |
| Phone: 305-441-0440 | Phone: 305-779-5665 |
| Fax: 305-441-0198 | Fax: 305-779-5664 |
| *Attorneys for Plaintiff* | *Attorneys for Defendant* |