UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 20-cv-22463-FAM

ASHLEY HODSON,

        Plaintiff,
v.

MSC CRUISES, S.A.,

        Defendant.
_____/

**PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF INCIDENT REPORT USED TO REFRESH THE CORPORATE REPRESENTATIVE'S RECOLLECTION AND MOTION FOR SANCTIONS AGAINST DEFENDANT FOR FAILURE TO PRODUCE A CORPORATE REPRESENTATIVE WITH ADEQUATE KNOWLEDGE OF DESIGNATED AREAS OF INQUIRY, OR IN THE ALTERNATIVE, MOTION TO COMPEL CORPORATE REPRESENTATIVE DEPOSITION**

Plaintiff, ASHLEY HODSON, by and through her undersigned counsel, and pursuant to Rules 26, 30 & 37 of the Federal Rules of Civil Procedure, and Local Rule 26.1(h), hereby moves this Honorable Court for an Order compelling Defendant, MSC CRUISES, S.A., to provide the incident report that it used to refresh it's corporate representative's recollection for the Rule 30(b)(6) deposition taken in this case, and for an Order imposing sanctions for its failure to prepare and produce a corporate representative with adequate knowledge of designated areas of inquiry, or in the alternative, to compel Defendant to produce a corporate representative with adequate knowledge of these areas of inquiry. Attached hereto are Plaintiff's Second Re-Notice of Taking Deposition of Defendant's Corporate Representative ("Depo Notice"), attached hereto as Exhibit 3, and the transcript of the deposition of Defendant's Corporate Representative ("30b6 Depo"), attached hereto as Exhibit 4. In support of this motion, Plaintiff states the

1
Aronfeld Trial Lawyers
www.aronfeld.com

following:

## Introduction

This is a maritime personal injury action in which, on or about September 1, 2019, as Plaintiff descended the stairs from approximately deck 17 to deck 16 of the MSC Seaside in a normal and proper manner, she slipped on the unreasonably wet and slippery surface of a stair step, causing her to suffer traumatic injuries that include, but are not limited to, multiple fractures to her tibia and ankle, as well as other injuries. See [DE 6 at ¶. 14].

## Incident Report and Memorandum of Law

1. "Where a party uses attorney work product **to refresh his memory**, the potential for conflict exists between Rule 612, which favors disclosure of materials used to refresh a witness' recollection, and the work-product privilege." *See In re Joint Eastern and Southern District Asbestos Litigation*, 119 F.R.D. 4 (E.D. & S.D.N.Y. 1988) (emphasis added) (highlighting added), attached hereto as Exhibit 1 at *5, p. 2.

2. When this scenario occurs, due to the issues of fairness raised in Federal Rule of Evidence 612, it is within the Court's discretion to find that a party using such work product to refresh his own memory waives the work-product privilege. *See Id*. at *6, p. 3 ("When this simple choice emerges the decision to give the work product to the witness could well be deemed a waiver of the privilege.").

3. In this regard, a factor "to be weighed include(s) whether the work product is 'factual' work product or 'opinion' work product involving the attorney's conclusions and legal strategies which are absolutely protected." *Id*.; see also *Johnson v. Carnival Corp.*, No. 19-CV-23167, 2020 WL 5653818 at * 1 (S.D. Fla. Sept. 23, 2020) (**Louis, M.J.**), aff'd, No. 19-CV-23167, 2020 WL 6544490 (S.D. Fla. Nov. 6, 2020) ("In fact, the court in

Bridgewater v. Carnival Corp., 286 F.R.D. 636, 642 (S.D. Fla. 2011), a case on which Defendant heavily relies, indicates that a straightforward recitation of objective facts about the circumstances surrounding an accident should not be protected by work product privilege.").

4. Indeed, another federal court in the Middle District of Florida considered this issue, and found that,

> [I]n light of the modern rules favoring broad disclosure, it is disquieting to posit that a party's lawyer may 'aid' a witness with items of work product2 and then prevent totally the access that might reveal and counteract the effects of such assistance." *Asbestos Litigation*, 119 F.R.D. at 5-6.
> . . .
> Construed too broadly, the work product privilege can interfere with the essential function of the discovery process of narrowing issues for trial. *United States v. Pepper's Steel & Alloys, Inc.*, 132 F.R.D. 695, 698 (S.D.Fla.1990). "Whatever heightened protection may be conferred upon opinion work product, that level of protection is not triggered unless disclosure creates a real, nonspeculative danger of revealing the lawyer's thoughts." *In re San Juan Dupont Plaza Hotel Fire Litigation*, 859 F.2d 1007, 1015 (1st Cir.1988). **On this record, AstraZeneca in resisting disclosure, has not shown that disclosure of the documents Ms. Ruhl reviewed in preparation for her deposition creates a "real, non-speculative danger" of revealing counsel's thoughts, and, to the extent it might, Plaintiffs are entitled to know what documents the witness relied on**.

*See In re Seroquel Products Liability Litigation*, 2008 WL 215707 (M.D., Fla. 2008) (emphasis added) (highlighting added), attached hereto as Exhibit 1 at *4, p. 4.

5. Indeed, another Court in the Southern District of Florida just recently resolved this exact same issue involving MSC, and what Plaintiff can only imagine is the exact same type of incident report at issue in this case, by ordering the Defendant to file the incident report under seal, and after reviewing the incident report itself to determine based on its own review whether the incident report contained opinion work product, ruled that,

> **The Undersigned has reviewed in camera the incident report (which Defendant filed under seal, at my direction)** and the deposition transcript of Luigi Guarracino, the safety officer on the ship.

> Mr. Guarracino testified that he did not recall the slip and fall incident. He explained that he responds to many incidents and that he therefore did not remember the one at issue in this lawsuit.
>
> However, he was able to provide substantive testimony by reading the incident report he prepared many months earlier. He refreshed his recollection by reading (before the deposition) the report for which Defendant MSC Cruises has asserted a work product claim. He did not have the report with him at the deposition, though.
>
> Given these circumstances, and pursuant to Federal Rule of Evidence 612(a)(2), the Undersigned, exercising my discretion, concludes that justice requires Plaintiff to have the incident report. MSC has waived the work product protection for the incident report by showing it to the deponent for deposition preparation and by having the witness rely heavily on it.
>
> **<u>In making this ruling, the Undersigned notes that the incident report does not contain an attorney's mental impressions and does not contain Mr. Guarracino's mental impressions. Instead, it consists of a succinct summary of the main facts, on a standard form with boxes checked off and a brief textual explanation</u>**.
>
> MSC shall produce the incident report to Plaintiff's counsel by December 30, 2020. Signed by Magistrate Judge Jonathan Goodman on 12/22/2020. (JG)

See [DE 27-1] (emphasis added).

6. Here, Defendant's corporate representative clearly reviewed the subject report, and although he appears to have believed that the incident report was already provided to Plaintiff, he was incorrect about that point, as Defendant continues to withhold this report. Defendant's corporate representative testified as follows:

> **<u>Q.· ·Okay.· Other than the specific conversations you may have had with Mr. Holman or any of the other lawyers that represent MSC, can you tell me what you did to prepare for today's deposition, what you looked at, who you spoke to, what you reviewed, in as much detail as possible</u>**?
> A.· ·Okay.· So the lawyers, they sent me the documents, I think like response to discovery, the complaint, some of the documents I believe that they provided to you, **the accident report for Ms. Hodson**, and yeah, that's pretty much it.
> Q.· ·When you say the accident report, what do you mean?
> A.· ·So there was an accident report that was developed on board the ship when Ms. Hodson fell, fell down the stairs, so I looked at that -- oh, accident report.

> And then there was also a medical report that was included with it.
> Q.· ·Is the accident report an internal investigating -- investigative report that your crew put together?
> A.· ·That is correct.
> **Q.· ·Did the accident report come to some conclusions as to how the accident happened?**
> **A.· ·The statement in the accident report indicated that they found that there was nothing wrong with the stairs, that it was in shipshape condition is kind of what they put in the report, and they put the reason, just a lack of attention by the guest**.

See Corporate Representative Deposition, Exhibit 4 at 7:23-9:1 (emphasis added) (highlighted added).

7. As such, it is clear that Defendant's privilege claims as to the incident report at issue here was waived just as it was in the Milana case decided against Defendant recently, and to the extent that Defendant contends that the incident report in this case somehow includes opinion work product (despite the apparent testimony of its corporate representative suggesting otherwise), Plaintiff respectfully submits that it should be required to submit its incident report under seal for an in-camera inspection just like in the Milana case.

## Corporate Representative Deposition

## Issue 1

8. On December 4, 2020, counsel for Plaintiff took the deposition Defendant's Corporate Representative. See 30b6 Depo, Exhibit 4, at 1:1. Plaintiff timely filed her notice of taking deposition duces tecum, which designated as Plaintiff's area of inquiry number fourteen (14), "Safety videos and/or safety instructions and/or **warnings provided to passengers regarding the use of the stairways** on Defendant's ships." See Depo Notice, Exhibit 3, at p. 4 (emphasis added).

9. However, when Defendant's corporate representative was asked the following question, he answered as follows:

> Q.· ·Okay.· Were there any Wet Floor signs anywhere near the stairs when Ms. Hodson fell?
> A.· ·I'm trying to remember what was in the report, but **I do not remember** reading that as being there. **I do not remember** seeing any mention of a Wet Floor sign.

See Corporate Representative Depo, Exhibit 4 at 12:19-23 (emphasis added).

10. Plaintiff respectfully submits that she was entitled to a better prepared corporate representative who was able to provide a definitive answer as to whether there was a wet floor sign in the subject area, as the presence of such a wet floor sign can constitute evidence of notice. *See, e.g., Frasca v. NCL (Bahamas), Ltd*., 654 F. App'x 949, 953 (11th Cir. 2016) ("[W]e held that the plaintiff had raised a genuine issue of material fact as to the cruise ship operator's prior knowledge where there was testimony that "warning signs were sometimes posted on the pool deck after rain" to warn passengers of the deck's slipperiness.").

## Issue 2

11. In addition, Plaintiff timely designated as Plaintiff's area of inquiry number twenty-three (23),

> The full details of **all previous slip and fall occurrences**, if any, of passenger injuries, accidents or incidents **on the subject stairs and/or other stairs with the same and/or similar flooring** as the subject area aboard the Seaside or other vessels in Defendant's fleet for three (3) years prior to Plaintiff's incident including: (a) the date of each occurrence; (b) defendant's date of notice; (c) the defendant's complete understanding as to what happened; (d) the nature of the injury; and (e) the details of any resulting legal claims.

See Depo Notice, Exhibit 1, at p. 5, (emphasis added).

12. She also timely designated her area of inquiry number twenty-four (24), "Guest complaints regarding slip and fall occurrences on the Seaside and its sister ships due to wet and/or slippery stairs." Id.

13. Likewise, she also timely designated her area of inquiry number twenty-six (26), "Policies and procedures for documenting and memorializing incidents where passengers suffered injuries such as those Plaintiff reported, as well as any logs that would verify actions performed, when they were performed, and by whom." Id.

14. However, when Defendant's corporate representative was asked the following question, he answered as follows:

> Q.· ·Okay.· So when you threw out this net of looking at priors, did you limit it to a particular location on the ship or was it ship-wide?
> A.· ·I searched by the class of ship, so it was the Seaside and the Seaview because they were the two ships with the same class of ship and similar stairways, and I searched for pretty much all -- it was anything that said stairway.
> Q.· ·Oh, okay. And what were the results of that search?
> A.· ·I just -- whenever that came up, I just forwarded it to our lawyers.
> Q.· ·Okay. How many came up --
> A.· ·Because I did this --
> Q.· ·-- approximately?
> A.· ·I don't remember.· I did it a few months ago, so I didn't look again on what was actually sent. I can't give you an exact number because I didn't actually count.
> Q.· ·That's okay. I don't need an exact number. Can I get an approximate number? Was it more than 100? More than 500? A dozen? Just approximately.
> ·A.· ·I don't know. I didn't -- because I did it a while ago and then I also was doing other research for other cases for our lawyers, so I cannot remember how much -- how many that was actually sent to them.
> Q.· ·And what would you need to look at to tell us either an estimation or specifically how many you actually found?
> A.· ·I would have to go back to my previous email that I sent to them to look at the exact number.
> . . .
> Q.· ·Because I got late yesterday some answers -- some supplemental answers from your attorneys that said that in July of 2018 at 12:10 in the -- 12:10 a.m., a passenger slipped on a wet metal part of the stairs. And so I'm concerned that passengers may have slipped on other parts of the stairs, but the answer that you provided is just limited to metal parts of the stairs. Do you see what I'm saying? So when you did your search, were there more than one person that had fallen down a carpeted staircase?
> A.· ·So like I mentioned before, I just gave all accidents, no matter what -- what occurred. You know, it could have been someone just falling, somebody running. You know, I just provided any accidents that occurred in the stairway area. You know, it could have been -- I don't know because I didn't read them. I mean, you could have like a fight. It could have been anything that occurred on a stairway. I

> gave that all to our lawyers and then they were the ones who did the search.
> Q.· ·It was more than one is what I'm saying?
> A.· ·Yeah. No, I sent -- yeah, I sent more than one report.
> Q.· ·Are you able to give us an estimation anything beyond one? Is it between one and a hundred?
> MR. HOLMAN: Don't speculate.
> BY MR. ARONFELD:
> Q.· ·An estimation.
> A.· ·No, I cannot. I'm sorry.
> Q.· ·It's between one and infinity?
> A.· ·I'm not sure.· I would have to -- I mean, I want to -- **I would have to look at my prior emails to see**.

See Corporate Representative Depo, Exhibit 4 at 29:5-30:10, 48:3-49:11 (emphasis added).

15. Plaintiff respectfully submits that she is entitled to know more details about these other incidents, since although Defendant claims these other incidents that were sent to its attorney were not substantially similar, first, "[t]he entitlement to discovery concerning other incidents does not require a party to lay the same foundation of substantial similarity as would be necessary to support admission into evidence." *Ree v. Royal Caribbean Cruises Ltd.*, 315 F.R.D. 682, 686 (S.D. Fla. 2016).

16. Second, and more importantly however, is that whether the incidents are substantially similar or not will ultimately be a decision for this Honorable Court to make **after reviewing the incidents**. To allow a Defendant to unilaterally decide which incidents are substantially similar or not would be tantamount to handing the role of the judiciary to the Defense, and as such, Plaintiff respectfully submits that Defendant should have provided a corporate representative who was able to answer how many prior incidents occurred that he turned over to Defendant's attorneys, and at least basic information about these incidents such as where they occurred on the stairs, whether the stairs were wet, and whether the incidents occurred going up or down the steps, both because this evidence in and of itself is relevant for her case, and this information is also relevant for

this Honorable Court to consider when ruling on Plaintiff's motion to compel a better response to her interrogatories and requests for production on prior incidents. [DE 17].

## Issue 3

17. In addition, Plaintiff timely designated as Plaintiff's area of inquiry number one (1), "[a]ll the facts alleged in the Complaint." *See* Depo Notice, Exhibit 3, at p. 3; see also areas of inquiry 5, 6, and 27, Id. at pp. 3 and 5.

18. Here, Plaintiff's operative Complaint clearly alleges that Defendant was vicariously liable for the actions of its medical crew, including the following specific facts, which Plaintiff was expecting Defendant to be prepared to discuss,

> 125. Defendant pays to stock the medical center with all supplies, medical machinery, various medicines, and equipment to be used therein, regularly stocking and restocking same.
>
> 126. Defendant collected all medical revenues directly from passengers and generated a profit on the sale of medical services, supplies, and equipment made by the ship's medical personnel to the passengers of the vessel.

[DE 6 at p. 22].

19. However, when Defendant's corporate representative was asked the following question, he answered as follows:

> Q.· ·I understand.· And I'm really asking the position of MSC.· Is MSC taking the position these are independent contractors and we're not responsible for the care and treatment they provided or are they saying they're independent contractors, but they're working for us to take care of our passengers and we're responsible for whatever care and treatment they provide?
> MR. HOLMAN:· Form.
> THE WITNESS:· Yeah, I can't -- **I don't know exactly how that arrangement is done. I'm just not knowledgeable on that medical part of it**.
> . . .
> Q.· ·Sure.· Do you provide the facility, the medical center, for use by the physicians and nurses?
> A.· ·Do we provide?
> Q.· ·Yeah.· That's your medical center.
> A.· ·Yeah, there is -- yeah, that's correct.

> Q.· ·Okay.· And do you, MSC, pay for the supplies, the Band-Aids and the thermometers and whatever else they have in there, x-rays, do you all pay for that?
> A.· ·**I'm not familiar, I guess, how the medical department gets their supplies and how they're getting paid.· I'm not sure**.
> Q.· ·Did you bill Mrs. Hodson for the care she received?
> A.· ·I'm sorry.· I don't know either.· I'm not sure. I have to look at the final bill on how they -- I think normally that would be on their -- it would be on their bill if they charged her or not.· I guess it would be indicated under her final bill.
> Q.· ·Does MSC on occasion bill their passengers for care that's received in the medical center?
> A.· ·Yes, that's correct.
> Q.· ·And does MSC keep the revenues from those encounters?· So, for instance, if I go in complaining of being seasick and they bill me $150 for the consult, is that money that goes to MSC?
> A.· ·**I do not know where that would go to**.

See Corporate Representative Depo, Exhibit 4 at 46:16-47:1, 50:5-51:5 (emphasis added).

20. As the answers to these questions are squarely relevant to Plaintiff's vicariously liability count, Plaintiff respectfully submits that she was entitled to a corporate representative who was prepared to discuss these issues.

**Memorandum of Law re: 30(b)(6) Deposition**

If Defendant had good faith objections, Defendant should have raised such objections through a motion for a protective order, rather than wasting Plaintiff's and now the Court's time by producing an unprepared witness. *See QBE Ins. Corp. v. Jorda Enterprises, Inc.*, 277 F.R.D. 676, 691 (S.D. Fla. 2012) ("Despite the potentially difficult burdens which sometimes are generated by Rule 30(b)(6) depositions, the corporation is not without some protection, as it may timely seek a protective order or other relief.") (emphasis added) (citing *C.F.T.C. v. Noble Metals Int'l, Inc.*, 67 F.3d 766, 772 (9th Cir. 1995) (emphasis added).

Defendant had an obligation under Fed. R. Civ. P. 30(b)(6) to prepare its corporate representative so that he could give complete, knowledgeable, and binding answers on behalf of Defendant. *QBE Ins. Corp.*, 277 F.R.D. at 689-90; *Continental Cas. Co. v. First Financial*

*Employee Leasing, Inc.*, 716 F.Supp.2d 1176, 1189 (M.D. Fla. 2010) ("A corporate party does not satisfy its obligations under Rule 30(b)(6) by merely 'producing a designee and [then] seeing what he has to say or what he can cover.'") (citing *Poole ex rel. Elliott v. Textron, Inc.*, 192 F.R.D. 494, 504 (D. Md. 2000)); *Provide Commerce, Inc. v. Preferred Commerce, Inc.*, 2008 WL 360588 *2 (S.D. Fla. 2008).

Defendant has breached its obligation to prepare and produce a knowledgeable designee. This Court has the authority to impose sanctions against Defendant for its failure to prepare and produce a knowledgeable designee. *Inmuno Vital, Inc. v. Telemundo Group, Inc.*, 203 F.R.D. 561, 566 (S.D. Fla. 2001) ("A 'previous directive order is not a prerequisite' to the imposition of sanctions under Fed. R. Civ. P. 37(d))" (quoting *Hall v. Leon County Building Supply Company, Inc.*, 84 F.R.D. 372 (N.D. Fla. 1979)).

In this instance, Plaintiff requests that this Court impose upon Defendant the sanction of a negative inference that its failure to produce a corporate representative with knowledge of Plaintiff's designated areas of inquiry be taken as conclusive proof that, if Plaintiff had been afforded the opportunity to depose a corporate representative with such adequate knowledge, evidence favorable to Plaintiff would have been uncovered on each question asked. Plaintiff further requests that Defendant be precluded from presenting any argument, evidence, testimony or facts relating to these unanswered areas of inquiry at trial. A negative inference is one of the least severe sanctions which this Court can impose, and is sufficiently warranted by the failure of Defendant to prepare and produce a corporate representative with adequate knowledge of her designated areas of inquiry.

In the alternative, or in addition to a negative inference (as requested herein), Plaintiff requests that this Court order Defendant to perform a complete search of its records, including,

but not limited to, all electronically stored information, as well as all physical documents in its possession or which it can obtain without suffering undue hardship, and to retrieve any and all other documentation and information necessary to prepare a Rule 30(b)(6) designee and to produce within fourteen (14) days a designee with adequate knowledge of the aforementioned designated areas of inquiry (after reviewing that documentation and information) for binding deposition testimony at Defendant's expense, including court reporting fees, videography fees, costs of transcripts and videos, as well as the cost for expedited transcripts and videos.

Plaintiff additionally requests any and all further relief this Court deems appropriate under the circumstances, including, but not limited to, the imposition of other sanctions upon Defendant, MSC CRUISES, S.A.

### RULE 7.1 CERTIFICATION

Pursuant to Local Rule 7.1(a)(3)(B), undersigned certifies that counsel for Plaintiff has conferred with opposing counsel in a good faith effort to resolve the issues raised in the motion, but has been unable to do so.

**WHEREFORE**, Plaintiff, ASHLEY HODSON, respectfully moves this Court for an Order imposing sanctions against Defendant, MSC CRUISES, S.A., for its failure to prepare and produce a corporate representative with adequate knowledge of Plaintiff's Designated areas of inquiry as described above, or in the alternative, Plaintiff requests the Court to compel Defendant to produce a corporate representative with adequate knowledge of Plaintiff's designated areas of inquiry. Plaintiff additionally requests all further relief this Court deems just or appropriate under the circumstances, including, but not limited to, the imposition of other sanctions upon Defendant.

## **CERTIFICATE OF SERVICE**

     I hereby certify that on December 31, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the below Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                                      Respectfully submitted,
                                      ARONFELD TRIAL LAWYERS
                                      1 Alhambra Plaza, Penthouse
                                      Coral Gables, Florida 33134
                                      Tel:  (305) 441- 0440
                                      Fax: (305) 441 - 0198
                                      Attorneys for Plaintiff

                    By:    */s/ Matthias M. Hayashi, Esq.*
                                      Spencer Marc Aronfeld, Esq.
                                      Florida Bar Number: 905161
                                      aronfeld@aronfeld.com
                                      Matthias M. Hayashi, Esq.
                                      Florida Bar No. 115973
                                      mhayashi@aronfeld.com

## SERVICE LIST

Jeffrey B. Maltzman, Esq.
jeffreym@maltzmanpartners.com
Steve Holman, Esq.
steveh@maltzmanpartners.com
MALTZMAN & PARTNERS, P.A.
55 Miracle Mile, Suite 300
Coral Gables, FL 33134
Phone: 305-779-5665
Fax: 305-779-5664
Attorneys for Defendant