# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

**CASE NO. 20-22463-CIV-MORENO/GOODMAN**

ASHLEY HODSON,

     Plaintiff,

v.

MSC CRUISES, S.A.,

     Defendant.

_____/

## REPORT AND RECOMMENDATIONS ON
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

In this personal injury lawsuit filed by a cruise ship passenger, Defendant MSC Cruises, S.A. filed a Motion for Summary Judgment or Alternatively Motion for Summary Adjudication. [ECF No. 22]. The Honorable Federico A. Moreno, United States District Judge, referred the summary judgment motion to the Undersigned for a Report and Recommendations. [ECF No. 39]. The Court held a Zoom hearing on the summary judgment motion. [ECF No. 74]. For the reasons stated below, the Undersigned **respectfully recommends** that Judge Moreno **grant in part** and **deny in part** the motion.

## I.     Introduction

On June 15, 2020, Plaintiff Ashley Hodson ("Hodson") initiated the instant action against MSC for personal injuries sustained while onboard MSC's cruise ship, the *MSC*

*Seaside*. [ECF No. 1]. The Amended Complaint and Hodson's testimony allege that on September 1, 2019, while descending an interior staircase that was positioned between two pool areas located on decks 16 and 17, Hodson slipped on a wet step, catching her flip-flop in between the carpet and metal nosing on the step. [ECF Nos. 6, p. 3; 22-1, pp. 48-49]. Hodson testified that she saw puddles of water on the steps both before and after she fell, and that other passengers were wearing wet bathing suits that were dripping water on the steps as they were ascending and descending the staircase. [ECF No. 22-1, pp. 48-49]. Hodson's fall resulted in multiple fractures to her tibia and ankle. [ECF No. 6, p. 3].

MSC moves for summary judgment as to all counts of the nine-count Amended Complaint. [ECF Nos. 22; 23]. First, MSC contends that it is entitled to summary judgment as to Hodson's negligence causes of action (Counts I, II, III, V, and VI) because it had no notice of the alleged dangerous condition, which it says is an essential element for all negligence claims under maritime law. [ECF No. 22, p. 1]. Second, MSC asserts that it is entitled to summary judgment as to Count IV of the Amended Complaint because MSC "did not build, design, install, or approve the subject step." *Id.* Finally, MSC contends that summary judgment should be granted in its favor as to Counts VII, VIII, and IX because Hodson is unable to offer any evidence to support her allegation that she received negligent medical care aboard the *MSC Seaside*. *Id.* Hodson filed an opposition response [ECF Nos. 32; 33], and MSC filed a reply. [ECF Nos. 37; 38].

The Undersigned held a hearing on MSC's summary judgment motion. [ECF No. 74]. Two days later, the Undersigned entered an order that granted MSC's summary judgment motion as to Hodson's medical malpractice claims (Counts VII, VIII and IX). [ECF No. 78, pp. 2-3].[1] Therefore, this Report and Recommendations addresses the remaining counts of the Amended Complaint, namely, Counts I through VI.

## II.    Legal Standard

On a motion for summary judgment, the Court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In addition, under Federal Rule of Civil Procedure 56(f)(1), the Court may grant summary judgment for the nonmoving party "[a]fter giving notice and a reasonable time to respond." *See Gentry v. Harborage Cottages-Stuart, LLLP*, 654 F.3d 1247, 1261 (11th Cir. 2011). The Supreme Court has explained the summary judgment standard as follows:

> [T]he plain language of [Rule 56] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden

---

[1] An order (as opposed to a Report and Recommendations) on the malpractice claims was proper because that portion of Defendant's Summary Judgment Motion was uncontested and was merely an administrative step, which confirmed Plaintiff's concession that summary judgment for Defendant was appropriate. [ECF No. 78, p. 3]. Plaintiff has not in any way objected to, or challenged, the earlier Order.

of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (internal quotation omitted).

The Court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). A dispute about a material fact is genuine if the evidence is such that a reasonable factfinder could return a verdict for the nonmoving party. *Id.* at 248; *see also Barfield v. Brierton*, 883 F.2d 923, 933 (11th Cir. 1989).

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323.

Once the movant makes this initial demonstration, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324; *see also* Fed. R. Civ. P. 56(c). To meet this burden, the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material

4

facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). That party must demonstrate that there is a "genuine issue for trial." *Id.* at 587. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Id.*

## III.    Applicable Law

"Federal maritime law applies to actions arising from alleged torts 'committed aboard a ship sailing in navigable waters.'" *Smolnikar v. Royal Caribbean Cruises Ltd.*, 787 F. Supp. 2d 1308, 1315 (S.D. Fla. 2011) (citing *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1321 (11th Cir. 1989)).

> General maritime law is "an amalgam of traditional common-law rules, modifications of those rules, and newly created rules." *See East River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 864–65, 106 S. Ct. 2295, 90 L. Ed. 2d 865 (1986). *See also Brockington v. Certified Elec., Inc.*, 903 F.2d 1523, 1530 (11th Cir. 1990). In the absence of well-developed maritime law pertaining to [Plaintiff's] negligence claims, [the Court] will incorporate general common law principles and Florida state law to the extent they do not conflict with federal maritime law. *See Just v. Chambers*, 312 U.S. 383, 388, 61 S. Ct. 687, 85 L. Ed. 903 (1941) ("With respect to maritime torts we have held that the State may modify or supplement the maritime law by creating liability which a court of admiralty will recognize and enforce when the state action is not hostile to the characteristic features of the maritime law or inconsistent with federal legislation."). *See also Becker v. Poling Transp. Corp.*, 356 F.3d 381, 388 (2nd Cir. 2004) ("federal maritime law incorporates common law negligence principles generally, and [state] law in particular"); *Wells v. Liddy*, 186 F.3d 505, 525 (4th Cir. 1999) (in the absence of a well-defined body of maritime law relating to a particular claim, the general maritime law may be supplemented by either state law or general common law principles).

*Id.*; *see also Hesterly v. Royal Caribbean Cruises, Ltd.*, 515 F. Supp. 2d 1278, 1282 (S.D. Fla. 2007).

The Eleventh Circuit very recently clarified the law governing the standards applicable to vicarious liability types of negligence claims against cruise ships. Specifically, in *Yusko v. NCL (Bahamas), Ltd*, our appellate court expressly held for the first time "that when a passenger makes a maritime negligence claim against a shipowner based on an employee's negligence under a theory of **vicarious** liability, the passenger need *not* establish that the shipowner had actual or constructive *notice* of a risk-creating condition." No. 20-10452, 2021 WL 2908568, at *1 (11th Cir. July 12, 2021) (emphasis added).

*Yusko* also confirmed the need to establish notice for direct liability negligence claims against a shipowner. *Id.* at *2-4.

## IV. Discussion

The Amended Complaint asserts six (remaining) negligence claims against MSC: negligent hiring and retention (Count I); negligent training and supervision (Count II); negligent failure to warn (Count III); negligent design, installation, or approval (Count IV); vicarious liability for negligence of crewmembers (Count V); and negligent failure to inspect, clean, maintain, repair, remedy, and/or take other reasonable measures for the safety of Plaintiff (Count VI). [ECF No. 6].

To satisfy the burden of proof on her negligence claims, Hodson must show: (1)

that MSC owed Hodson a duty to protect her from a particular injury; (2) that MSC (or the employee, for the vicarious liability count) breached that duty; (3) that this breach was the actual and proximate cause of Hodson's injury; and (4) that Hodson suffered actual injury. *Yusko*, 2021 WL 2908568, at *2.

The duty a cruise operator owes its passengers is "ordinary reasonable care under the circumstances," a standard which requires, "as a prerequisite to imposing liability in [a **direct liability claim against the ship owner**], that the carrier have had actual or constructive *notice* of a risk creating condition." *Id*, at *2, (quoting *Keefe*, 867 F.2d at 1322) (emphasis added).

> To establish the *owner* of a ship in navigable waters breached *its* duty of care [in a *direct* liability theory of negligence], a plaintiff must show: '(1) a dangerous condition existed; (2) the vessel's operator had actual notice of the dangerous condition; or (3) if there was no actual notice, that [d]efendant had constructive notice of the dangerous condition for an interval of time sufficient to allow the vessel's operator to implement corrective measures.'

*Stewart v. Carnival Corp*., 365 F. Supp. 3d 1272, 1275 (S.D. Fla. 2019) (quoting *Reinhardt v. Royal Caribbean Cruises, Ltd*., Case No.: 1:12–cv–22105, 2013 WL 11261341, at *4 (S.D. Fla. Apr. 2, 2013)) (emphasis added).

The notice requirement, however, "does not – and was never meant to – apply to maritime negligence claims proceeding under a theory of vicarious liability." *Yusko*, 2021 WL 2908568, at *2. In clarifying its position that notice is not required for a vicarious liability theory, the *Yusko* Court expressly disagreed with the ship owner's argument that

the notice requirement applies regardless of whether the negligence claim is based on direct or vicariously liability. *Id.* at *3. The *Yusko* Court explained that the ship owner's argument "erroneously conflates the **very different concepts** of direct and vicarious liability." *Id.* (emphasis added).

Given this distinction between the standards applicable to direct and vicarious negligence theories, the Undersigned will use the two different standards when appropriate: i.e., using the notice requirement for the direct negligence theories and not using it for the sole vicarious liability theory in Count V.

Count V is entitled "Negligence Against Defendant for the Acts of its Crewmembers Based on Vicarious Liability." [ECF No. 6, p. 17]. In paragraph 101 of the Amended Complaint, Hodson alleges that

> [d]efendant is vicariously liable for its crew members' negligent acts of failing to inspect, clean and/or maintain the subject area and the vicinity, failing to warn passengers of the risk creating and/or dangerous conditions and/or failing to do other activities to help make sure the subject area and the vicinity were safe.

*Id.* at 18.

*Yusko* was decided after the summary judgment motion was fully briefed and after the hearing was held. Therefore, the motion, response, reply, and oral argument focused only on issues of notice and whether Plaintiff provided sufficient evidence of actual or constructive notice to avoid an adverse summary judgment in MSC's favor. For example, MSC's summary judgment motion argues that it is entitled to summary judgment on

Count V "because MSC had **no notice** of the alleged dangerous condition (i.e., water on the subject step)." [ECF No. 22] (emphasis added).

But Count V is for vicarious liability, which, after *Yusko*, does not require notice. Given that the submissions and oral argument did not discuss the *Yusko* "no-notice-needed-for-vicarious-liability-types-of-negligence-claims" rule, the Undersigned entered an Order directing the parties to brief *Yusko*, which they did. [ECF Nos. 104; 105].

### A. MSC is Entitled to Summary Judgment on Hodson's Allegations of Negligent Hiring and Retention and Negligent Training and Supervising of MSC's Crewmembers

MSC argues that summary judgement should be entered in its favor as to Hodson's negligent hiring and retention claim (Count I), as well as to Hodson's negligent training and supervising of crewmembers claim (Count II). MSC contends that Hodson failed to designate any specific **facts** showing that there is a genuine issue for trial on either claim. [ECF No. 37, p. 2].

Count I alleges that MSC was negligent when it hired or retained the crewmembers responsible for inspecting and maintaining the subject area. [ECF No. 6, p. 5]. To state a claim for negligent hiring or retention, Hodson must allege that (1) the individual was incompetent or unfit to perform the work, (2) MSC knew or reasonably should have known of the particular incompetence or unfitness, and (3) the incompetence or unfitness proximately caused Hodson's injuries. *See Gayou v. Celebrity Cruises, Inc.*, No. 11-23359-Civ, 2012 WL 2049431, at *5 (S.D. Fla. June 5, 2012) (holding plaintiff failed to

plead facts supporting negligent hiring or retention); *Smolnikar v. Royal Caribbean Cruises Ltd.*, 787 F. Supp. 2d 1308, 1318 (S.D. Fla. 2011); *Koens v. Royal Caribbean Cruises, Ltd.*, 774 F. Supp. 2d 1215, 1220 (S.D. Fla. 2011) ("[M]erely pleading the existence of such duties without providing a factual basis for their imposition is insufficient to state a cause of action."); *Doe v. NCL (Bahamas) Ltd.*, No. 1:16-cv-23733-UU, 2016 WL 6330587, at *4 (S.D. Fla. Oct. 27, 2016) (dismissing plaintiff's claim for negligent hiring or retention because no facts whatsoever were alleged to create a plausible inference of negligence on defendant's part).

After the close of discovery, it is undisputed that there are no facts in the record to suggest that any crew member was unfit or incompetent or that MSC knew or should have known of the particular unfitness or incompetence of any purportedly unfit crew member. Therefore, Hodson cannot establish the essential elements of her negligent hiring and retention claim.

Similarly, negligent supervision occurs when, during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicate his unfitness or incompetence, and the employer fails to take further actions such as investigating, discharge, or reassignment. *Doe v. Carnival Corp.*, 470 F. Supp. 3d 1317, 1324 (S.D. Fla. 2020). Thus, Hodson must establish that (1) MSC received actual or constructive notice of an employee's unfitness, and (2) MSC did not investigate or take corrective action such as discharge or reassignment. *Id.* Again, there

are no facts in the record to support either element of Hodson's cause of action for negligent supervision.

Finally, negligent training occurs when an employer was negligent in the implementation or operation of a training program and this negligence caused the plaintiff's injury. *Id.*; *Doe v. NCL (Bahamas) Ltd.*, 2016 WL 6330587, at *4. Here, there is no record evidence that MSC's training program was deficient or improperly implemented. Therefore, Hodson fails to satisfy the essential elements of her negligent supervision cause of action.

In sum, the record shows a complete absence of facts to support Hodson's claims of negligent hiring, retention, training and supervising of crewmembers. Therefore, the Undersigned **respectfully recommends** that Judge Moreno **grant** MSC's Summary Judgment Motion as to Counts I and II.

**B.    MSC is <u>Not</u> Entitled to Summary Judgment on Hodson's Allegation of MSC's Negligent Failure to Warn.**

Count III of the Amended Complaint is titled "Negligent Failure to Warn of Dangerous Conditions." [ECF No. 6, p.12]. The claim alleges that Defendant breached its duty of reasonable care when it failed to warn Hodson of the dangers posed by the water on the steps and how slippery the stair nosings become when wet. [ECF No. 6, pp. 2, 12].

As discussed above, a cruise line's duty of reasonable care in a direct liability claim for the ship owner's own negligence requires, as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of the risk-creating condition. *Yusko,*

2021 WL 2908568, at *3 (explaining that the notice requirement governs "because the passengers alleged wrongdoing by the shipowner itself."); *see also Keefe*, 867 F.2d at 1322.

MSC contends that summary judgment in its favor is warranted because "[t]here is no evidence whatsoever showing MSC had prior notice of the water on a step nosing that [Hodson] alleges caused her fall." [ECF No. 22, p. 3] (emphasis removed). MSC also argues that it had no duty to warn Hodson because the condition of the steps was open and obvious.

Thus, in order to defeat MSC's summary judgment motion as to her failure to warn claim, which is part and parcel of its direct liability theory, Hodson must raise genuine issues of material fact as to whether (1) MSC had notice, either actual or constructive, of the slipperiness of the ship's stairs and (2) whether the alleged dangerous condition was open and obvious.

### 1.    Notice

To avoid summary judgment on Count III (as well as her other direct negligence claims based on MSC's own alleged negligence), Hodson must present evidence that MSC had actual or constructive notice of the alleged dangerous condition. *Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 720 (11th Cir. 2019) ("[A] cruise ship operator's liability 'hinges on whether it knew or should have known' about the dangerous condition."(quoting *Keefe*, 867 F.2d at 1322)).

"A plaintiff can show actual notice by showing that the ship operator knew about the alleged risk-creating condition." *Sutton v. Royal Caribbean Cruises, Ltd.*, 774 Fed. Appx. 508, 511 (11th Cir. 2019).

In the absence of evidence of actual notice, "[a] maritime plaintiff can establish constructive notice with evidence that the 'defective condition exist[ed] for a sufficient period of time to invite corrective measures.'" *Guevara*, 920 F.3d at 720 (quoting *Monteleone v. Bahama Cruise Line, Inc.*, 838 F.2d 63, 65 (2d Cir. 1988)). "Alternatively, a plaintiff can establish constructive notice with evidence of substantially similar incidents in which 'conditions substantially similar to the occurrence in question must have caused the prior accident.'" *Id.* (quoting *Jones v. Otis Elevator Co.*, 861 F.2d 655, 661-62 (11th Cir. 2019)).

Hodson argues that MSC was on notice of the dangerous condition based on (1) prior similar incidents [ECF No. 34, pp. 2-4], (2) the length of time the condition existed [ECF No. 34, pp. 4-7], (3) a warning label that was affixed to the subject steps, and (4) a safety video that warned passengers to use caution when on wet surfaces. [ECF No. 34, pp. 7-8].

### a.    Prior Similar Incidents

"[A] plaintiff can establish constructive notice with evidence of substantially similar incidents in which 'conditions substantially similar to the occurrence in question must have caused the prior accident.'" *Guevara*, 920 F.3d at 720 (quoting *Jones*, 861 F.2d at

661-62). "The 'substantial similarity' doctrine does not require identical circumstances, and allows for some play in the joints depending on the scenario presented and the desired use of the evidence." *Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1275, 1287 (11th Cir. 2015). The Eleventh Circuit has held that prior incidents are sufficiently similar when the conditions surrounding the two incidents are **similar enough** to allow the jury to draw a **reasonable inference** concerning the Defendant's ability to foresee the type of occurrence and its result. *Id.* (discussing *Borden, Inc. v. Fla. E. Coast Ry. Co.*, 772 F.2d 750, 755 (11th Cir. 1985)) (emphasis added).

Hodson notes that in response to an interrogatory regarding prior slips and falls due to water on the nosing of the stairs in the subject area of the *MSC Seaside*, MSC provided the following answer: "On July 12, 2018 at approximately 12:10 a.m., a passenger allegedly slipped on the "wet medal [sic] part of stairs" going down to Deck 15 aboard the Seaside." [ECF No. 34, p. 3]. Hodson also cites the following exchange from the deposition transcript of MSC's corporate representative, Mr. Ramos, to support her claim that MSC had knowledge of the incident that occurred in July 2018 and considered it to be similar in nature:

> Q. Mr. Ramos, would you agree, regardless of where Ms. Hodson may have fallen, starboard, port, deck 16, deck 18, the prior event in July of 2018 is a substantially similar incident?
>
> A. That is -- that is correct.

14

[ECF No. 34, p. 3 (quoting ECF No. 28-4 at 28:5-9)]. Hodson argues that, based on this evidence, "[MSC] clearly ha[d] constructive notice of the danger of the metal nosing on the subject stairs when wet." [ECF No. 34, p. 4].

MSC argues that Hodson's evidence of a substantially similar incident is insufficient because her evidence is not of "an incident involving a passenger slipping on the stair's metal nosing which had become wet due to passengers' dripping bathing suits." [ECF No. 37, p. 3]. Therefore, MSC contends, Hodson did not show evidence of a substantially similar incident; and, thus, failed to establish notice. *Id.* at p.4.

Considering the evidence of a passenger who previously slipped on a wet step nosing aboard the *MSC Seaside* in the light most favorable to Hodson – as I must do – the Undersigned considers the prior incident similar enough to Hodson's incident such that a reasonable jury *could* find that it is substantially similar and that MSC therefore had constructive notice of the danger created by wet step nosings. Of course, a trial jury could also reach the opposite result and conclude that the accident is not similar enough. But that possibility is why we have trials. *See generally Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013) (affirming order denying police officers' summary judgment motion based on qualified immunity and noting that credibility determinations are "the stuff of which jury trials are made.").

### b.    Length of Time Condition Existed

"A maritime plaintiff can establish constructive notice with evidence that the

'defective condition exist[ed] for a sufficient period of time to invite corrective measures.'" *Guevara*, 920 F.3d at 720 (quoting *Monteleone*, 838 F.2d at 65).

In her deposition, Hodson testified that she noticed that water that was being tracked in by the passengers in bathing suits had been pooling into puddles on the subject stairs, and those puddles "looked like they had been there for quite awhile." [ECF No. 34, p. 6 (citing ECF No. 25-1 at 58:9-59:12)]. Hodson specifically testified as follows:

Q. Do you know what caused you to slip?

A. There was a slippery substance on the stairs.

Q. Do you know what it was?

A. I believe it was the water from the pool areas and from the wet bathing suits and all the people running around with the bare feet, tracking all the water from the pool.

Q. So you could see people had bathing suits when you were walking down the steps, you saw people -- were people in bathing suits walking up the steps?

A. Yes.

Q. And they were dripping water all over?

A. Yes. And we saw the water as we were heading to the pool area through the pool area to the steps, we saw water and we also saw water being tracked in and out of the arcade area right by the steps.

Q. And I don't mean this to sound sarcastic, but it's going to come off that way. Well, if you saw that the steps [(Not the exact step she slipped on)] were wet and people were dripping water, there are other ways to get down to the pool; is there a reason you didn't take another -- another route?

A. We were actually told that you had to take the stairs to get to that particular pool area. Otherwise we would have taken an elevator in the first place.

[ECF No. 34, p. 6 (quoting ECF No. 25-1 at 49:7-50:10)] (some alterations removed).

Viewing this testimony in a light most favorable to Hodson, the Undersigned finds that a reasonable jury could conclude that Hodson's description of the activity occurring on the subject staircase before and during her fall evidences a hazardous condition that existed for a sufficient length of time to create a genuine issue of fact as to whether MSC had constructive notice of the dangerous condition. *E.g., Lebron v. Royal Caribbean Cruises Ltd.*, 818 Fed. Appx. 918, 921 (11th Cir. 2020) (reversing order granting cruise line's motion for directed verdict in maritime negligence action arising from passenger's injuries while ice skating on a cruise ship because the issue of whether the cruise ship had constructive notice -- part of his claim that the operator failure to reasonably maintain the rink caused a gouge in the ice that caused of contributed to his fall -- was for the jury when the evidence "could lead a reasonable jury to infer the gouges in the ice existed for at least **ten minutes**" before plaintiff's fall) (emphasis supplied).

Of course, similar to the reality governing the prior incident, another reasonable jury could conclude that the hazardous condition had *not* existed for a sufficient time to establish constructive notice. *See generally Greer v. Ivey*, 767 Fed. Appx. 706, 712 (11th Cir. 2019) (reversing, in part, order granting summary judgment motion in federal civil rights

case involving fatal shooting and noting that the weighing the credibility of witness testimony against other evidence "is the stuff of which jury trials are made.").

### c.    The Warning Label on the Subject Stairs

"Courts in this district have generally found that a warning sign or warning label may be evidence that a defendant had actual or constructive notice of a dangerous condition." *Lipkin v. Norwegian Cruise Line Ltd.*, 93 F. Supp. 3d 1311, 1323 (S.D. Fla. 2015) (collecting cases).

> However, in all of these cases, the warning sign or label was considered evidence of a defendant's notice because the defendant itself was responsible for the warning. This is because the defendant's use of the warning created the logical inference that the defendant had prior knowledge of the dangerous condition necessitating the warning.

*Id.*

Here, Hodson has not shown that **MSC,** rather than the shipbuilder, placed the warning label on the stairs. Indeed, MSC's corporate representative testified as follows:

Q. Why did MSC only put warning signs going up the steps as opposed to for folks that are descending, going down the steps?

A. So, like I mentioned earlier, I mean, we just charter the ship, so those were something that was already in place when we chartered the ship. It wasn't something that we -- our company put in place ourselves.

Q. If MSC wanted to put stickers on the steps or warning signs, are they permitted to make modifications to the ship that they're chartering?

A. So it depends if it's a major modification or something minor. But placing stickers is minor, so yeah, they would -- they could place it.

Q. Right. I'm sure if you wanted to put a go-kart track on the top of the cruise ship, maybe you've got to talk to the owners. But to put a Watch Your Step sign, that would be okay?

A. That's correct.

[ECF No. 28-4, pp. 38-39] (emphasis added).

Under these circumstances, the warning label on the subject staircase creates no inference of MSC's actual or constructive notice of a risk-creating condition caused by wet bathing suits dripping water on the staircase. *See Keefe*, 867 F.2d at 1322 (finding no inference of cruise line's actual or constructive notice where the undisputed evidence showed that a moving walkway's manufacturer affixed warning labels to the walkway). Therefore, the warning label in the instant case does not generate a genuine issue of material fact as to whether MSC had notice that water on the subject steps would lead to a risk-creating condition.

### d.    The Safety Video that Played on Televisions in Passenger Cabins

Hodson next argues that a safety video that MSC plays on the televisions in the passengers' staterooms shows that MSC had actual or constructive notice of the hazard posed by water on the subject staircase prior to her fall. [ECF No. 34, p. 8].

In *Sorrels*, the Eleventh Circuit found

no meaningful distinction between the practice of displaying warning signs on the one hand and of showing warning videos on the other. Each allows the inference that the cruise ship operator had "actual or constructive knowledge that the [surface in question] could be slippery (and therefore dangerous) when wet.

*Id*. at 1288.

Concerning MSC's safety video, MSC's corporate representative testified as follows:

Q. There's a safety video that MSC has and plays on the televisions and the staterooms of passengers. Are you familiar with it?

A. Yes.

Q. One of the statements in the safety video is that safety is the number one concern for MSC. Is that true?

A. I don't have to re-watch the video, but if -- you said you've seen it state that?

Q. Yes.

A. Then I guess it's correct, then, if it's –

Q. Well, is safety the number one concern for MSC?

A. Yeah. It is a concern, yes.

Q. One of the other statements made in the safety video is that it advises passengers to use caution on wet decks.

A. Yes, that's correct.

Q. Okay. Why does MSC have that information in its safety video?

A. It's just to let the passengers know that, you know, when there are decks that are wet, they need to be aware of, you know, potential -- that they could potentially slip or fall if something is wet.

Q. And that's information that MSC had before Ms. Hodson's fall, correct?

A. So yeah, the videos -- those videos were developed prior to her fall.

[DE 28-4, pp. 51-52].

Unlike the warning label, the passenger safety video that played on televisions in passenger cabins does allow the inference that MSC had "actual or constructive knowledge that the [stairway] could be slippery (and therefore dangerous) when wet." *Frasca v. NCL (Bahamas), Ltd.*, 654 Fed. Appx 949, 954 (11th Cir. 2016) (quoting *Sorrels*, 796 F.3d at 1288). It follows then that the safety video warning of *surfaces* being slippery when wet is enough to show that there is a genuine issue of material fact regarding MSC's actual or constructive notice of the hazard posed by water on the subject *staircase*. At trial, of course, a jury would be acting reasonably if it determined that the video established constructive notice *or* that the video did not generate that conclusion.

### 2.    Open and Obvious

MSC argues that even if it did have notice of the potentially dangerous condition, it still had no duty to warn Hodson because the condition of the steps was open and obvious, such that a reasonable person would have observed the condition of the stairs. [ECF No. 22, pp. 12-13].

The question of whether the dangerous condition was open and obvious is guided by the "reasonable person" standard. *Lamb by Shepard v. Sears, Roebuck & Co.*, 1 F.3d 1184, 1189–90 (11th Cir. 1993) (applying Georgia law and stating that "[w]hether a danger is open and obvious is determined 'on the basis of an objective view' and that 'the subjective perceptions of the . . . injured party are irrelevant.'"); *Lugo v. Carnival Corp.*, 154 F. Supp.

3d 1341, 1346 (S.D. Fla. 2015) ("[The plaintiff's] subjective observations are irrelevant in determining whether a duty to warn existed.").

Thus, the question is whether a reasonable person would have observed the wetness of the staircase and appreciated its dangerous condition. The relevant facts are as follows:

Hodson was descending a staircase that was located between two pool areas on decks 16 and 17 of the cruise ship. [ECF No. 22-1, pp. 48-49]. She observed people climbing up and down the stairs in wet bathing suits and noticed that the water that was being tracked in by the passengers had been pooling into puddles on the subject stairs. According to her deposition testimony, Hodson took extra care on the steps because she recognized what she deemed to be a dangerous condition. *Id.* at p. 64. However, the record supports an inference that a reasonable person in Hodson's circumstances would not have recognized the specific danger of a *slippery stair nose*. Therefore, there is a genuine dispute of material fact as to whether the danger associated with the staircase was open and obvious.

In sum, a factfinder could conceivably find sufficient evidence to support an inference that MSC had constructive notice of the alleged dangerous condition due to (1) substantially similar incidents; (2) the condition having existed long enough that MSC should have noticed it; and (3) a safety video that showed passengers the dangers of wet

surfaces. Moreover, the Undersigned rejects MSC's argument that the dangerous condition was open and obvious, thereby eliminating its duty to warn.

Accordingly, I **respectfully recommend** that Judge Moreno **deny** Defendant's motion for summary judgment as to Count III of the Amended Complaint.

### C.   MSC is Entitled to Summary Judgment on Hodson's Allegation of Negligent Design, Installation, and Approval of the Subject Area.

MSC argues that there is nothing in the record to show that MSC designed the stairway at issue onboard the *MSC Seaside*, installed the subject stairs, or approved the subject stairs. [ECF No. 22, p. 17]. Hodson has not responded to MSC's assertion that no record facts exist to support Count IV. Without evidence, Hodson cannot prove negligence predicated on a theory of negligent design, installation, or approval. Furthermore, MSC contends that there is no evidence that the stairs themselves are dangerous. Indeed, Hodson blames her accident on a transitory condition -- water on the steps -- rather than some structural defect in the stairway construction.

Therefore, the Undersigned **respectfully recommends** that Judge Moreno **grant** summary judgment in MSC's favor as to Count IV of the Amended Complaint.

### D.   MSC is entitled to summary judgment on Hodson's allegation of negligence against MSC for the acts of MSC's crewmembers based on vicarious liability.

Hodson argues that she has sufficiently alleged, and submitted evidence to support, a vicarious liability theory of negligence. She cites the following language from *Yusko*:

> A plaintiff is the master of his or her complaint and may choose to proceed under a theory of direct liability, vicarious liability, or both. It may be true that, in some cases, it will easier for a passenger to proceed under a theory of vicarious liability than under one of direct liability. But common sense suggests that there will be just as many occasions where passengers are limited to a theory of direct liability. Sometimes, as in *Keefe*, a passenger will not be able to **identify any specific employee** whose negligence caused her injury.

[ECF No. 104, p. 2] (quoting *Yusko*, 2021 WL 2908568 at *5) (emphasis in original).

According to Plaintiff, *Yusko* imposes only two requirements for alleging vicarious liability: (1) that the plaintiff asserted this theory of liability, and (2) that she is able to identify a specific employee who was negligent. Significantly, she argues that there is no indication in *Yusko* that a plaintiff be required to know the employee's name. Instead, she says, the identify language means, at most, that a plaintiff "needs to be able to distinguish an employee who's [sic] specific conduct caused her harm as opposed to generalized speculation about possible crewmember actions that Plaintiff herself did not observe." [ECF No. 104, p. 2].

MSC, however, contends that Plaintiff did not adequately identify the employee who was purportedly negligent. First, it points out that the Amended Complaint does not identify any person whose actions were negligent. Second, it notes that Hodson testified that it was the *stairs* which became wet from water dripping from bathing suits that caused her to fall, not the specific negligent act of an *employee*. Third, MSC points out that the identity of the allegedly negligent ship employee in *Yusko* was agreed upon and no one contested the crewmember's status as an employee. But here, MSC emphasizes,

Plaintiff testified that an *unidentified* crewmember told her to take the stairs. Fourth, MSC further notes that there was no allegation that the unidentified crewmember in any way caused her to fall. Fifth, MSC argues that there is no evidence that the unidentified person was even an MSC employee.

Concerning this fifth point, MSC points out that Plaintiff did not in her deposition say that the unidentified person was wearing an MSC name tag. It argues that Plaintiff is merely *assuming* that "a uniform" and "a little name tag" -- her description of the purported employee in her deposition -- is sufficient to establish the person's status as an MSC employee. For example, MSC counters, some third-party vendors on the ship, such as those who work in the wine program, wear name tags and uniforms but are not MSC employees.

The Complaint does not allege that MSC is vicariously liable for the supposed negligence of an MSC employee who instructed Hodson to use the wet stairway. Instead, the paragraph concerning the vicarious liability allegations mentions *other* specific acts (e.g., failing to inspect) and *general* allegations (e.g., "failing to do *other* activities to help make sure the subject area and the vicinity were safe.") [ECF No. 6, p. 18] (emphasis added).

Therefore, the Undersigned must determine whether Plaintiff adequately identified the alleged MSC employee who instructed her to use the wet and slippery

stairs and whether Plaintiff has submitted adequate **evidence** to escape an adverse summary judgment. The only evidence Plaintiff points to is her deposition testimony that the crewmember told her "that you had to take the stairs to get to that particular pool area." [ECF No. 105-2, p. 7].

Neither side has called the Court's attention to any case law or other legal authority on the issue of what amount of evidence must a Plaintiff submit to demonstrate that an employee of the Defendant was the one whose negligence can be attributed to the employer.

There is no dispute that Plaintiff has not provided the *name* of the person who she claims is the MSC employee who directed her to the wet and slippery stairs. She does not know the name and therefore cannot provide it as of now. Her description of the speaker as a person in a uniform and wearing a name tag is *some* evidence to support an inference that the person was an MSC employee.

If the unnamed, uniform-wearing employee was an MSC employee and Plaintiff can establish this employment status, then Plaintiff's inability to also name the MSC employee may not be fatal to the vicarious liability claim.

Based on the evidentiary record submitted to the Court, it does not seem as though the parties spent any significant time in discovery trying to further identify the person in the uniform. For example, Plaintiff has not submitted interrogatories which she could have propounded to MSC, asking to identify employees working on the ship that day.

Likewise, she has not mentioned a request for a photo lineup of MSC employees working that day as a means to identify the speaker. But, by the same token MSC has not submitted any evidence to support its alternative theory that a person *in uniform* on the ship worked for a wine vendor, rather than MSC.

Of course, the nature of the discovery propounded would depend on the parties' perception of the law as it existed at the time the discovery was being drafted. *Yusko* did not exist at the time discovery was propounded. Before *Yusko,* several Eleventh Circuit opinions were drafted in a way which suggested that the notice requirement was also necessary for a vicarious liability claim.

In fact, the *Yusko* Court noted that it might seem "at first glance" as if the scope of *Keefe* (which requires actual or constructive notice of the risk-creating condition) "is as sweeping" as the defendant cruise ship operator argues. *Yusko*, 2021 WL 2908568, at *4. "After all," the *Yusko* Court noted, "we did not expressly limit the notice requirement to any particular theory of liability." *Id*. After acknowledging that it "continued to require plaintiffs in maritime negligence cases to establish notice" on the shipowner's part "over the intervening decades," the appellate court explained that its "maritime precedent on employee-caused torts "plainly contemplates such a limitation." *Id*. at *3-4.

If both parties were operating under the pre-*Yusko* view that notice was required for both direct and vicarious liability claims, then it is understandable that the parties' discovery efforts concerned notice, rather than vicarious liability.

Given the pre-*Yusko* caselaw, the absence of a clarifying evidence in the record and the lack of legal authority submitted by the parties on how much evidence is needed to "identify" an employee and whether a plaintiff must name the negligent employee if the evidence establishes that he in fact works for the defendant employer, the Undersigned believes it prudent to conclude that a reasonable jury could conclude that the uniformed person was in fact an MSC employee. *Glenn v. Myers*, No. 17-0194, 2018 WL 2766880 (S.D. Ala. June 7, 2018), at *6 (denying defendant's summary judgment motion and noting that Plaintiff stated a claim against an employer for vicarious liability "for the actions of its employees and supervisors **regardless of whether the identities of those employees are known"**) (emphasis added). *See also* 53 *Causes of Action Second Series* 2d 281 § 5 (2021) ("If the plaintiff can prove that the person whose negligence caused his or her injury was an employee of the defendant, it may not be necessary to specifically identify that person. *See Sanchez v. Rice*, 580 P.2d 1261, 1262-23 (Colo. App. 1978) (where evidence permitted a finding that the plaintiff was negligently shot during a riot by one of 135 police officers employed by the defendant, the defendant's liability was not precluded by the plaintiff's failure to identify the officer who was responsible or by the individual exoneration of two officers).").

But this ruling only permits Plaintiff to clear the first hurdle – demonstrating the existence of a factual dispute over the issue of whether the person in uniform was an MSC

employee. It does not simultaneously lift Plaintiff over the second hurdle: submitting sufficient evidence that the employee was negligent.

Plaintiff's only evidence to support her vicarious liability claim in Count V is that an employee told her to use the stairs. That is hardly enough to constitute negligence. Plaintiff's theory would be akin to a crewmember in *Yusko* advising a passenger to visit the room where the dance competition was taking place. Although the *Yusko* plaintiff stated a vicarious liability claim based on the employee who released her hands during a dance move, she would not be able to maintain a claim based on an employee's advice to participate in the competition absent further evidence, such as evidence that the employee knew the dancer was reckless and had previously injured passengers.

At bottom, Plaintiff submitted no evidence to prove the essential element of negligence by the purported employee. As a result, MSC is entitled to summary judgment on Count V. *See Celotex*, 477 U.S. at 322-23 (summary judgment shall be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial … since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *see also T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (the nonmoving party may not rely on the pleadings but must present specific facts creating a genuine issue of material fact).   Because Plaintiff cannot establish that the speaker (even if an MSC

employee) was negligent, the Undersigned **respectfully recommends** that Judge Moreno **grant** Defendant's motion for summary judgment as to Count V of the Amended Complaint.

  **E.**  **MSC is <u>Not</u> Entitled to Summary Judgment on Hodson's Allegation of Negligent Failure to Inspect, Clean, Maintain, Repair, Remedy and/or Take Other Reasonable Measures for the Safety of Hodson**

Plaintiff's allegations in Count VI concern negligent failure to inspect, clean, maintain, repair, remedy or take other safety measures which constitute a <u>direct</u> liability claim against MSC. Therefore, in addition to breach of a duty to provide reasonable care, she must show *notice*.

Much of the same evidence used to analyze Plaintiff's claim for MSC's failure to fulfill its duty to warn in Count III applies here, as well. In other words, the same methods a plaintiff can use to establish constructive notice are available here.

For example, if the water was on the stairway long enough for MSC to have noticed, then Hodson can establish constructive notice and a breach of MSC's duty of reasonable care. *See generally Lebron* 818 Fed. Appx. 918 (jury could infer that gouges in the ice existed for at least **ten minutes** before plaintiff's fall); *see also Easterwood v. Carnival Corp.*, No. 19-cv-22932, 2021 WL 1152398 (S.D. Fla. Mar. 26, 2021) (finding, after a bench trial, that cruise ship operator had constructive notice because another person fell on the same spot on the Lido deck near the pool approximately an hour before the plaintiff fell).

The record evidence here is sufficient to permit a rational jury to conclude that the water from passengers' bathing suits had been dripping for at least ten minutes, which is sufficient to permit an inference to support constructive notice.

Plaintiff has not provided much evidence that MSC's inspection, cleaning or maintenance fell below the applicable standard of care. She did not submit evidence of MSC's inspection and maintenance protocols. Nor did she point to maintenance procedures manuals or other sources governing the applicable standard on the ship or in the cruise ship industry.

Similarly, Plaintiff did not submit expert testimony concerning industry standards and whether MSC's maintenance, inspection and cleaning procedures fell below industry standards. This testimony, if it existed, "is relevant in determining whether [the ship owner's] conduct fell below the standard of care." *Carroll v. Carnival Corporation*, 955 F.3d 1260, 1269 (11th Cir. 2020) (reversing summary judgment for cruise line on claim that defendant failed to maintain a safe walkway, holding that an open and obvious risk does not preclude claim for negligent maintenance and noting that expert's opinion created a genuine factual issue on negligent maintenance allegation); *Sorrels*, 796 F.3d at 1282 ("[E]vidence of custom within a particular industry, group or organization is admissible as bearing on the standard of care in determining negligence … Compliance or noncompliance with such custom, though not conclusive on the issue of negligence, is one of the factors the trier of fact may consider in applying the standard of care."); *Frasca*,

654 Fed. Appx. at 955 (negligence for failing to maintain the deck in a reasonably safe condition).

On the other hand, a jury could conclude that the elapsed time was "more than sufficient to 'invite corrective measures.'" *LeBron*, 818 Fed. Appx. 921-22 (citing *Keefe,* 867 F.2d at 1322).

Of course, a jury could also conclude that Hodson did *not* meet her burden of establishing breach of the applicable duty of care when she did not provide evidence about procedures or protocols or expert opinion testimony. In the present posture, of course, I must construe all inferences in Plaintiff's favor when evaluating MSC's summary judgment motion. A trial jury will not confront that restriction, and the trial result could therefore be significantly different. The record evidence concerning both constructive notice and breach is not, to be diplomatic, overwhelming. To the contrary, it is barely sufficient to generate grounds to deny the summary judgment motion.

Nevertheless, the Undersigned is constrained to **recommending that** Judge Moreno **deny** the summary judgment motion concerning Count VI.

## V.    Conclusion

For these reasons, the Undersigned **respectfully recommends** that Judge Moreno **grant** MSC Cruises, S.A.'s summary judgment motion as to Counts I, II, IV, and V and **deny** MSC's summary judgment motion as to Counts III and VI.

## VI.    Objections

The parties will have ten (10) days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if any, with United States District Judge Federico A. Moreno. Each party may file a response to the other party's objection within ten (10) days of the objection.[2] Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**DONE AND ORDERED** in Chambers, in Miami, Florida, on August 2, 2021.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Federico A. Moreno
All counsel of record

---

[2]     The Undersigned is <u>slightly shortening the time for Objections and the Response</u> because the motion has been thoroughly briefed and because the parties recently submitted post-hearing supplemental memoranda on *Yusko's* effect on this case.